COMMONWEALTH *vs.* NATHANIEL S. JACOBS.

Worcester.    September 29, 1890. — October 23, 1890.

Present : FIELD, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Intoxicating Liquors — Indictment — Joinder of Counts — Club — Common Nuisance — Variance.*

The Pub. Sts. c. 213, § 18, requiring an averment that the counts of an indictment are different descriptions of the same act, do not apply to an indictment that charges in distinct counts different offences, founded upon the same facts, of the same general nature, and punishable in the same way.

On an indictment for keeping for the illegal selling, distributing, and dispensing of intoxicating liquors a place used by the "Warren Club," whose corporate name is the "Warren Social Club," there is no variance, if the club is as well known by one name as by the other.

An indictment for keeping a place used by a club for the selling, distributing, and dispensing of intoxicating liquors may be maintained, if one of the purposes for which the club kept the place was so to use it illegally.

At the trial of an indictment against the "steward" of a social club for keeping and maintaining a common nuisance, there was evidence that the defendant, in referring to the club-room, told an officer that he ran the place ; that the

room was fitted up like a bar-room; that men were found there drinking from bottles labelled with others' names; that the defendant and another were seen to handle at one time eleven cases of lager beer, all marked with one name; that a whiskey jug there found was labelled with the name of the club; and that the defendant, who testified that only members of the club obtained liquors there, which they bought for themselves elsewhere as their individual property, made no reply when told by an officer that he could not find on the list of members the names of two persons seen drinking there. *Held,* that it could not be said, as matter of law, that there was not sufficient evidence to warrant a verdict of guilty.

Upon an indictment for maintaining a place used by a club for illegally selling, distributing, and dispensing intoxicating liquors, books and papers relating to the business of the club, and found lying about the premises, of which the defendant had charge, as well as of such business, are admissible in evidence against him.

INDICTMENT in two counts, the first alleging that the defendant at Worcester, from May 2, 1890, to August 11, 1890, "did assist in keeping and maintaining a certain tenement and place there situate then and at the times aforesaid, and there used by the Warren Club for the purpose of illegal selling, distributing, and dispensing of intoxicating liquors, said tenement and place so used as aforesaid being then and at the times aforesaid and there a common nuisance"; the second alleging that the defendant at the same time and place "did keep and maintain a certain common nuisance, to wit, a tenement in said Worcester, then and on said other days and times there used for the illegal sale and illegal keeping for sale of intoxicating liquors."

In the Superior Court, before the jury were impanelled, the defendant moved to quash the indictment, on the ground that two counts, describing different offences depending upon the same facts, were set forth therein; and that it did not contain an averment that the different counts were different descriptions of the same acts. *Dunbar,* J. overruled the motion; and the defendant excepted.

At the trial, the government introduced the testimony of police officers, which tended to prove the following facts. On August 2, 1890, the officers visited the premises in question, and opposition was made to their entering, whereupon they forced their way in. The defendant was found upon the premises in his shirt sleeves, and wearing an apron. He was asked who ran the place, and answered that he ran it. The premises consisted of two rooms, a front room twenty-five feet by twenty, and a rear

room about ten feet by fifteen. There were six or eight windows in the front room, and one in the rear room, all of which had heavy curtains. The front room contained seven small tables, arranged around the room against the walls, and sixteen chairs. Twelve men were sitting at the tables, and four of them were drinking lager beer, with bottles and glasses in front of them on the tables. Some of these men who were at a table with bottles upon it, including one Powers and one Davenport, were drinking from bottles with labels upon them bearing names different from their own. In the rear room a table was found on which was a paper bag with five or six pounds of sugar, a sugar-bowl half filled, a plate with slices of lemon, a shaker, a scallop for straining, spoons, sixteen beer glasses, and twenty-five whiskey glasses. Under the table were a tub with clean water, such as is used at bars for rinsing glasses, and two slop-pails with water and lemon peel in them. At one end of this room was a refrigerator, with a large quantity of lager beer in bottles and several bottles of whiskey in it, lying on the ice. There were twenty-five cupboards or lockers, bearing forty-two names, fitted with doors and locks, and upon a key-board were keys for the locks. One third of the lockers were empty and the rest had in them bottles of whiskey and bottles of lager beer. In one of the lockers, marked H. Kiehl, were found two quarts of corks, a bottle of whiskey, and eight dollars in money; also other bottles marked with the names of other persons. There were eight lager beer cases containing full and empty bottles. All these bottles had on them labels bearing the name of some person, different names being upon the different bottles. The defendant was asked for a list of the members of the club, and a book produced by him bore the name neither of Powers nor of Davenport. In answer to an inquiry as to the name of the club, the defendant replied that it was the Warren Social Club. On August 5, 1890, the premises were again visited, and substantially the same condition of things found. The defendant was there, and fourteen lager beer cases and sixty bottles of lager beer were found in the refrigerator. Fourteen of these bottles of lager beer were marked with one man's name, and twelve with another. In Kiehl's locker were found about seventy-five keys that fitted the door to the room. On August

8, 1890, the premises were again visited, and the defendant and Kiehl found handling eleven cases of lager beer which were marked with the same name, and was told that they had just been brought in.   In a closet were found seven cases of empty lager beer bottles, and a gallon jug containing whiskey, marked "Warren Club, Worcester." Each case had a tag on its side marked with a name and addressed to "Warren Club, Worcester." On this occasion one of the officers said to the defendant, "I can't find Powers or Davenport in here," referring to the list of members, and the defendant made no reply.   A tag taken from a jug in the rooms containing whiskey bore the words, "For the Warren Club, Worcester, Mass."

The defendant put in evidence the certificate of incorporation of the Warren Social Club, dated July 22, 1890, for the encouragement of athletic exercises and the improvement of its members by literary and musical exercises and social gatherings. The defendant testified that he was employed by the club, on July 27, 1890, as steward of the Warren Social Club; that his duties were to care for the place, and wait upon the members of the club; that he took from the members written orders, each signed by the member giving it upon a wholesale liquor dealer, accompanied with the money, and carried both money and order to the dealer's agent; that one expressman brought the liquor named in the order to the rooms of the club, marked with the name of the member ordering it, and he thereupon put it in the locker of such member; that he had nothing more to do with the liquors, and that the members of the club took them from their lockers as they wanted them, and drank them usually in the front room at the tables; and that he was a member of the club, and did not know the names of all the members.   Upon cross-examination, he testified that his wages were fifteen dollars per week; that he did not now know how many cases of beer were ordered before or at about the time of the several visits of the police officers, or the names of the members ordering them; that he supposed the club bought the lemons and sugar, but he did not buy them; that sometimes two members joined in an order for a case of beer; and that it was not a part of his duty to keep the lockers locked.   There was evidence tending to show that there were no musical instruments in the rooms,

and no books or any kind of literature except two or three newspapers.

A paper found in an unlocked locker, on one of the occasions above referred to, which was a printed form of receipt for " initiation fee " and " monthly dues " to the Warren Club, and a book also found on the top of a locker, in plain sight, projecting over and beyond the top, containing memoranda of purchases of ice, sugar, and lemons, and of express charges on liquors paid by the Warren Club, averaging over ten dollars per day, were admitted in evidence, against the defendant's objection; and the defendant excepted.

The government contended that the club which actually kept the place and used it as charged in the indictment was the Warren Club ; that the Warren Social Club was a sham and a fraud, and did not keep and use the place; and that it appeared by the evidence that it was the Warren Club which actually did so.

The defendant asked the judge to give the following instructions, among others : " 1. That the first count of the indictment cannot be maintained by reason of a variance between the allegation and the proof of the name of the club.   2. That there is no evidence that would warrant a conviction under the second count. . . . 5. That in order to a conviction under the first count it must appear that the sole purpose of the Warren Club was the sale, distribution, or dispensation of liquors to its members or others."

The judge refused to give these instructions, and instructed the jury, upon the subject matter embraced in the first count, that it was in controversy whether the Warren Club or the Warren Social Club kept and used the place ; that the name of the club must be proved as alleged ; that the defendant would be entitled to a verdict of not guilty by reason of a variance, if the name of the club were not so proved; that there was evidence which, as the government claimed, and the defendant denied, established the fact that there was a Warren Club, and that it kept and used the place as charged in the indictment, and that the Warren Social Club was a mere sham and fraud, and did not keep and use the place; and that this claim of the Commonwealth must be proved beyond a reasonable doubt, and if so proved, this branch of the case was established.

The jury returned a verdict of guilty on the first count and of not guilty on the second count; and the defendant alleged exceptions.

*J. Hopkins & J. E. Sullivan,* for the defendant.

*A. J. Waterman,* Attorney General, *& H. A. Wyman,* Second Assistant Attorney General, for the Commonwealth.

KNOWLTON, J.  In this Commonwealth several different substantive offences may be included in different counts of the same indictment, when they are of the same general nature, and when the mode of trial and the nature of the punishment are the same.  *Carlton* v. *Commonwealth,* 5 Met. 532.  *Commonwealth* v. *O'Connell,* 12 Allen, 451.  *Commonwealth* v. *Brown,* 121 Mass. 69.  *Commonwealth* v. *Adams,* 127 Mass. 15.  The two offences charged in this indictment are of a similar character, and punishable in the same way, and they fall within this rule.

It is equally well settled that the same offence may be alleged in different counts of an indictment to have been committed in different modes, and by different means, so as to meet different possible phases of the evidence.  *Pettes* v. *Commonwealth,* 126 Mass. 242, and cases there cited.  In applying the St. of 1861, c. 181, (Pub. Sts. c. 213, § 18,) the court seems to have recognized the doctrine which is stated in *Commonwealth* v. *McLaughlin,* 12 Cush. 612, and 12 Cush. 615; and virtually to have held that, at the common law, different offences founded on the same facts may be stated in different counts of an indictment, provided they are of the same general nature, and punishable in a similar way.  *Commonwealth* v. *O'Connell,* 12 Allen, 451.  *Commonwealth* v. *Costello,* 120 Mass. 358.  See also *Commonwealth* v. *Cain,* 102 Mass. 487.  There is no reason in principle why this rule should not prevail.  The statute referred to was not intended to impose upon the criminal pleader any new restrictions, and its principal, if not its only purpose, was to permit, in different counts of an indictment, the joinder of allegations of different offences founded on the same facts, when the offences so differ in their nature, or are so differently punishable, that they could not have been joined prior to the enactment of the statute.  The motion to quash was rightly overruled.

The rule was well established, when questions of this kind were raised upon a motion in arrest of judgment, that misjoinder

is cured by a verdict for the defendant on all but one of the counts; and it has since been laid down in cases in which this statute was invoked. Whether, if this case came within the statute, the rule should be treated as properly applicable to a case where the defendant is wrongly forced to a single trial upon different counts which cannot legally be joined, it is unnecessary to decide. See *Commonwealth* v. *Packard*, 5 Gray, 101; *Commonwealth* v. *Holmes*, 103 Mass. 440; *Commonwealth* v. *Chase*, 127 Mass. 7, 14; *Commonwealth* v. *Adams*, 127 Mass. 15, 18.

The defendant's request for a ruling in relation to a variance was rightly refused. If the club which kept the place was the same that was incorporated under the name "Warren Social Club," there was evidence to warrant the jury in finding that it was as well known by the name Warren Club as by that under which it was incorporated, and the instructions were sufficiently favorable to the defendant.

To convict the defendant, it was not necessary to show that the sole purpose of the Warren Club was to sell, distribute, or dispense intoxicating liquors to its members or others. It was enough if one purpose for which it kept the tenement was so to use it illegally.

The evidence tended to show that the principal purpose for which the tenement was kept was to sell, distribute, or dispense intoxicating liquors. The only testimony which tended to control the inference naturally to be drawn from the circumstances was that of the defendant himself, who endeavored to show that the only persons who were accustomed to obtain liquor there were members of the club, each of whom used liquors which had been bought for him elsewhere on his personal account and as his individual property. The jury might well have disbelieved that part of the defendant's statement. There was much in the circumstances which tended to contradict him. The defendant told an officer that he ran the place. Men were found drinking from bottles on which were pasted the names of other persons. Many utensils and other articles in the room were such as the jury might have found to be the furnishings of an ordinary bar-room. At one time the defendant and another person were found handling eleven cases of lager beer, all marked with the same name. A gallon jug con-

taining whiskey was marked "Warren Club, Worcester." The defendant made no reply when told by the officer that he could not find in the list of members of the club the names of Powers and Davenport, who were seen drinking there; and there was much else to throw suspicion on the defendant's story. On the whole evidence, the jury might well have believed that all the liquor on the premises was the property of the club.

We do not intend to intimate that they might not have found the defendant guilty, if they had trusted him implicitly in all that he said. There is much force in the contention that a place kept by a club for the purpose of having liquors ordered from wholesalers by the club's agent, and brought there for individual members, to be left in his charge and drunk there from time to time by the owners, is as clearly within the prohibition of the statute as if the liquors were bought and dispensed as the property of the club. The defendant's request for a ruling that there was no evidence that would warrant a conviction on the second count was rightly refused.

The paper and the book, to the admission of which in evidence exception was taken, were on the premises of which the defendant had the care, and where he might have seen them. They pertained to the business of which he had charge, and were rightly admitted.                    *Exceptions overruled.*