GERTRUDE B. THOMPSON v. PEOPLE'S BUILDING, LOAN AND INVESTMENT COMPANY, Appellant.

**Principal and Agent:** UNDISCLOSED PRINCIPAL: *Recovery of over-payments.* Where an investment company made a loan for a
1 third party to the plaintiff, who supposed she was dealing
2 only with the company, and that the money was furnished by it. the company, having acted for an undisclosed principal, will be liable for overpayments made by the plaintiff.

WHO MAY SUE TO RECOVER OVERPAYMENTS. The grantor has suffi-
3 cient interest to maintain an action to recover overpayments
4 made by the grantee on a mortgage on the property for the benefit of the grantor.

**Deed Held Mortgage.** Where the grantee of a deed agreed to re-
3 convey the property on the payment of a certain sum by the grantor and all the expenses of maintaining the property and
4 the grantee was prevented from selling the same except on three month's notice to the grantor the deed will be deemed a mortgage.

*Appeal from Woodbury District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

SATURDAY, OCTOBER 5, 1901.

ACTION at law to recover an overpayment, made by mistake, on a mortgage loan. Defendant puts in issue the fact of overpayment, and by counterclaim seeks to recover a sum returned to plaintiff on her claim. There was a verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Marks & Mould* for appellant.

*C. P. Bowman* and *J. C. McConkey* for appellee.

WATERMAN, J.—The material portions of plaintiff's petition are as follows: "That on or about the year 1888 it [defendant] executed and delivered to this plaintiff its certain certificate certifying that she was the owner of twenty shares of stock in said company of the par value of $100 per share. That at or about the time of the execution of said certificate she borrowed the sum of $1,500, as she supposed, from said defendant company. That in truth and in fact the said $1,500 was not loaned by said defendant company at all, but by a third party, who made use of said defendant company to act as his trustee to receive payments on said loan in monthly installments at the regular rates that were charged the *bona fide* loans of the said company. That the said trust was accepted by the said company through action of its several secretaries up to the time of the appointment of its present secretary, W. E. True, and the money paid in on installments as aforesaid was regularly turned over to the use of the said third party until the said $1,500 loan was paid in full, together with all accrued interest thereon. That, subsequent to the payment of the note as aforesaid, this defendant continued to receive installments, to be applied, as was supposed by this plaintiff, on the pay-

ment of the aforesaid twenty shares of stock and the liquidation of the said $1,500 loan, until the sum of $360 had been paid over and above the amount applied to the liquidation of said loan. That the said defendant has paid to this plaintiff on the money so collected the sum of $200. That there is still due the sum of $160, no part of which has been paid." Defendant answers, averring that it made the loan to plaintiff; that no overpayment was made; and by counterclaim it seeks to recover the $200 returned to plaintiff on the ground, that its secretary, by whom such payment was made, had no authority to make the same. The undisputed testimony shows that plaintiff was the owner of certain real estate in South Dakota. Her husband was indebted to one W. E. Higman. Higman offered to procure a loan from defendant association on plaintiff's real estate, to enable her to pay this indebtedness of her husband, assuring her that if she entered the 1889 series, and made the back payments, her stock would mature and the loan be paid in five years. Plaintiff accepted this proposition, and made her note and mortgage to defendant for the sum of $1,500. Defendant association issued plaintiff a certificate for 20 shares of its stock at the par value of $100 each. This certificate it retained. The note bore interest at 7 per cent. per annum. The mortgage provided, in addition, for the payment of certain premiums, fines, and penalties. As a matter of fact, plaintiff was never recognized as a member of defendant association. The part which it took in the transaction was as agent for Higman, to enable him to collect his debt against her husband. The money borrowed was advanced by Higman, and no part of the payments received was applied on stock, but all such payments were turned over to Higman to be applied on the note. The verdict of the jury fixed the amount of plaintiff's indebtedness, according to the terms of the note, at $1,500, plus 7 per cent. interest. This, we think, was correct. On this basis there was an overpayment in all of $360. Deducting from this the $200 already paid plain-

tiff, and adding 6 per cent. interest, and we obtain the amount of the verdict rendered, $168.80. As defendant was acting in this matter as agent for an undisclosed principal, it is liable to plaintiff. *Stevenson v. Polk,* 71 Iowa, 278; *Blackmore v. Fairbanks,* 79 Iowa, 282.

II.     Another defense interposed is that, even if there was an overpayment, and defendant is liable to some person therefor, it is not to plaintiff. This position has support, if at all in the following facts: One Henry Muttlebury held a second mortgage on this property. In August, 1893, plaintiff made him a deed therefor, taking from him a written agreement, the material parts of which are as follows: "I, Henry Muttlebury, of Buffalo Gap, Custer county, South Dakota, party of the first part, for myself, my heirs, and assigns, in consideration of the premises and on the payment of the moneys and the performance of the conditions hereinafter mentioned, do hereby covenant, promise, and agree to and with Gertrude B. Thompson, of Sandwich, De Kalb county, Illinois, party of the second part, to sell and convey to Del B. Thompson, of Sandwich, De Kalb county, Illinois, his heirs or assigns, by a good and sufficient deed of warranty free from all incumbrances, the following described premises, situated in Buffalo Gap, South Dakota, and described as follows, to wit:   *   *   * The conditions upon which the above covenants and promises are made are that the said party of the second part, her heirs or assigns, shall, on or before the first day of September, A. D. 1897, pay to the said party of the first part, his heirs or assigns, the sum of $300, and shall also on or before said date refund to him, the said party of the first part, all taxes, assessments, and insurance on said premises paid by him, and the cost of all repairs necessarily made on the buildings thereon subsequent to September 1, 1893, and shall also pay the amount of all moneys paid by the said

party of the first part necessary to pay off and discharge, according to the terms and conditions thereof, a certain mortgage on said premises held by the People's Building, Loan and Investment Company, of Sioux City, Iowa, together with interest at the rate of twelve per cent. per annum on all the obligations mentioned above. The $300 to draw interest from March 29th, 1893, and all others from the time the money was paid out by the said party of the first part. And the said party of the first part agrees to assume all of the above obligations for taxes, assessments, insurance, and repairs, and said mortgage, and to meet the same as they shall severally become due. And the said party of the first part agrees to keep a true and full account of all money so paid out by him on account of said premises as above specified, and also of all money received by him as rent for said premises, and to apply the same, first, in liquidation of the money so paid out by him as above provided, and then of the said sum of $300, and to render a full and true statement of debits and credits, under the provisions of this agreement, to the party of the second part, from time to time, on reasonable notice and request. The party of the first part shall have the right to sell the above-described premises if, upon three months' notice, the party of the second part fail to pay him the sum of $300. If such sale be made, the party of the first part shall pay to the party of the second part all money received in excess of the obligations mentioned above: provided, however, that this provision does not extend to his heirs or assigns. In the event of the failure to comply with the terms hereof by the said party of the second part, the party of the first part shall be released from all obligation, in law or equity, to convey said property to the said Del B. Thompson, who, together with the said party of the second part, shall forfeit all right thereto." After July, 1893, Muttlebury made the payments on defendant's mortgage. It is the theory of defendant that Muttlebury was the owner of

the real estate, and the portion of overpayment if any, still in its possession, belongs to him, and plaintiff has no right of action therefor. A deed with a defeasance is, in effect, only a mortgage. *Haggerly v. Brower,* 105 Iowa, 395; *Vennum v. Babcock,* 13 Iowa, 194; *Chase v. Abbott,* 20 Iowa, 154. This was not a sale absolute with an option of re-purchase by Del B. Thompson, for Gertrude B. Thompson, the grantor, is recognized by the instrument of defeasance as retaining rights in the real estate after the making of the deed. It is she who is to make the payments to redeem the title. It is she upon whom Muttlebury must serve notice before he has a right to sell the land. If this transaction was, as we hold, a mortgage to Muttlebury, then payments made by him were for the benefit of plaintiff, and she can recover them. Muttlebury was seeking to pay off this prior lien under the contract with plaintiff. He paid what appeared to be due by the terms of defendant's mortgage. Doubtless, as against plaintiff, he would have a lien for the amount so paid. This being true, it follows, of course, that plaintiff's remedy is against defendant.

Some rulings on evidence are complained of. It is sufficient to say that we find among them no prejudicial error. The judgment of the district court is correct.—AFFIRMED.