JOHN BLAIR v. STATE OF NEBRASKA.

FILED OCTOBER 20, 1904.   No. 13,611.

1. Information: ELECTION.   When an information contains two or more counts charging distinct and separate offenses of the same nature, the trial court may, in the exercise of a sound discretion, require the county attorney to elect on which count he will rely for a conviction, either before the commencement of the trial, or after the state has produced its evidence in chief, and before the accused is required to make his defense.

2. Motion to Quash.   Record examined, and held that the defendant's motion to quash the second and third counts of the information was properly overruled.

3. **Demurrer to Evidence.** Evidence contained in the bill of exceptions examined, and found sufficient to resist the demurrer of the defendant thereto, and his motion to require the court to direct the jury to return a verdict in his favor.

4. **Rulings.** *Held*, that the record discloses no reversible error in receiving and rejecting evidence.

5. **Evidence is relevant** which shows that the accused has threatened or assaulted a witness, has endeavored to prevail on him to abscond, has procured his absence, has endeavored to induce him to testify falsely, or has concealed the whereabouts of such witness from the prosecution; and such conduct on the part of an accused person is an incriminating circumstance to be weighed by the jury in determining the question of his guilt.

6. **Statutory Rape: EVIDENCE.** In a prosecution for statutory rape, frequent acts of improper familiarity between the parties implicated may be received in evidence to prove their adulterous disposition toward each other.

7. **Leading Questions.** The trial court may, to a reasonable extent, permit leading questions to be propounded, on direct examination, to a hostile or reluctant witness.

8. **Continuance.** Record examined, and *held* that defendant's application for a continuance, after the prosecutrix had changed her evidence, was properly denied.

9. **Reopening Case.** It is within the sound discretion of the trial court to permit a party, in furtherance of justice, to reopen his case and introduce other and further evidence at any time before the close of the trial; and where it is made to appear that there has been no abuse of discretion, and the substantial rights of the opposite party have been in no maner prejudiced by such a course, error cannot be predicated thereon.

10. **Assistant Counsel.** An objection to the appearance of private counsel to assist the county attorney in conducting a criminal prosecution, to be available, should be made at a suitable time and in the proper manner, and must be supported by at least some showing that the county attorney did not request or require any assistance, and the court had not appointed such counsel for that purpose.

11. ———. *Held*, that a general objection to the appearance of such counsel made during the trial in connection with the examination of a witness, and without any showing to support it, was properly overruled.

12. **Instruction.** The fact that a single clause of an instruction is incomplete is not sufficient ground for a reversal, if, when the whole

Blair v. State.

paragraph is read and construed together, its meaning is clear and certain, and it appears from the record that the jury could not have been misled thereby.

13. Evidence reviewed, and *held* sufficient to sustain the verdict.

Error to the district court for York county: Arthur J. Evans, Judge.   *Affirmed.*

*George B. France,* for plaintiff in error.

*Frank N. Prout, Attorney General, Norris Brown* and *Meeker & Wray, contra.*

Barnes, J.

The state prosecuted John Blair in the district court for York county on a charge of statutory rape. The trial resulted in a conviction, and the court sentenced him to be confined in the state penitentiary for a period of three years. From such conviction and judgment the defendant brings error. The information contained three counts, in each of which the state attempted to charge the accused with the crime of statutory rape, committed on the person of one Beulah Thomas, who was alleged to be a female child under 18 years of age. In the first count the date of the alleged sexual intercourse was stated to be June 1, 1901; in the second count the time alleged was January 4, 1903, and in the third count the date named was February 5, 1903. Before going to trial the defendant filed a motion to require the state to elect on which count it would prosecute. The court, at that time, reserved his decision, but when the state had introduced its evidence in chief the motion was sustained, and the county attorney elected to rely for a conviction on the third count of the information.

Counsel for the defendant contended that the failure of the court to require an election before the trial commenced was reversible error. In some jurisdictions it is held that, where the indictment or information charges two or more distinct and separate felonies, the prosecutor

Blair v. State.

should be required to elect on which count or charge he will rely for a conviction, before going to trial. But most of the courts hold that a number of separate and distinct felonies, all of which may be tried in the same manner, which are of the same general character, which require for their proof evidence of the same kind, and the punishment for which is of the same nature, may be charged in separate counts of one information, and the party thus charged may be placed on trial on all of such counts at the same time; that the matter of requiring an election in such cases is left to the sound discretion of the trial court, to be exercised when the state has submitted its evidence in chief, and before the accused is put on his defense. This rule is sustained by the great weight of authority in this country. Maxwell, Criminal Procedure (2d ed.), 550, 551; Wharton, Criminal Pleading and Practice (9th ed.), secs. 295, 296; *Korth v. State,* 46 Neb. 631; *State v. Hodges,* 45 Kan. 389, 26 Pac. 676; *Roberts v. People,* 11 Colo. 213, 17 Pac. 637; *State v. Crimmins,* 31 Kan. 376; *State v. Schweiter,* 27 Kan. 499; *Commonwealth v. Jacobs,* 152 Mass. 276, 25 N. E. 463; *State v. King,* 114 Ia. 484, 91 N. W. 768; *Bailey v. State,* 4 Ohio St. 440.

We are firmly committed to the rule last above stated, and so it only remains for us to determine whether the court was guilty of an abuse of discretion in not requiring the prosecutor to elect on which count he would rely until after he had produced his evidence in chief. The record discloses that, although it was charged in the first count that the act of sexual intercourse took place on the 1st day of June, 1901, and in the second count that the offense therein described was committed on the 4th day of January, 1903, the state introduced no evidence establishing, or tending to establish, either of these counts. In fact, the record clearly shows that no attempt was made to prove the commission of any offense other than the one on which the state elected to rely for a conviction. This being the case, the fact that the state was not required

to elect, until after it had introduced its evidence in chief, resulted in no prejudice to any of the defendant's substantial rights. It therefore follows that the court was guilty of no abuse of discretion.

The defendant insists that the court erred in refusing to quash the second and third counts of the information; and also in overruling his motion to quash the third count after the state had introduced its evidence and rested. And it is contended that the state having charged in the first count that the offense described therein was committed on the 1st day of June, 1901, the second and third counts, in which the dates of the offenses charged were alleged as of January 4, and February 5, 1903, failed to state any offense, because, if the charge contained in the first count were true, the prosecutrix could not have been chaste at the times last above mentioned. In the first place, an examination of the first count shows that the facts alleged therein were not sufficient to constitute the crime of statutory rape. Therefore, it stated no offense, and, even if that count had stated an offense, it appears that the state had no proof, or at least offered none, to sustain it. For these reasons the allegations of the first count could in no way affect the charges contained in the other two. Again, when the state elected to rely on the third count for a conviction, the second count was as completely eliminated from the case as though it had never been set forth in the information. It follows that when the accused was required to present his defense the information, in legal effect, contained only the third count, and stood precisely as though it had never contained any other. That count was sufficient in form and substance to charge the offense of statutory rape, and on that count, and no other, the jury returned a verdict of guilty. Again, it was held in *Bailey v. State*, 57 Neb. 706, that the defendant cannot plead his own defilement of the girl within the statute of limitations as a defense to a later defilement. The court said:

"Had the first defilement of the girl by the prisoner

occurred in Nebraska instead of Iowa on the date it did, and which was prior to the one charged in the indictment, then the first defilement would be no defense to the prisoner on an indictment for the second, since both would have been within the statute of limitations and each intercourse a part of the crime charged in the indictment."

For these reasons it is apparent that the court did not err in overruling the defendant's motion to quash.

It is further contended that the court erred in overruling defendant's demurrer to the state's evidence. It is true that when the state first rested, the prosecutrix had, by her evidence, denied that the defendant had sexual intercourse with her at any time. But taking into consideration the testimony of her mother, in which she related the fact of having caught the defendant and her daughter in a compromising position in the barn on the 5th day of February, 1903, with other circumstances detailed by the witnesses, the conduct of the prosecutrix and the defendant toward each other, the fact of his having her taken from her own home in the night time, conveyed her to a neighbor's, taking her thence to his own house where he kept her concealed for more than a week, at a time when he knew she was wanted by the state as a witness against him in the prosecution of this case, together with her confessions to her mother, and others, as shown by the record, we cannot say that a conviction could not have been sustained, and that the case should not have been submitted to the jury. We think, however, this objection is eliminated because the case was reopened and other and further evidence introduced by the state.

Under the general head of errors of law occurring at the trial, many assignments are discussed by the defendant's counsel, and we will endeavor to dispose of them in the order in which they are presented.

Complaint is made because the prosecution was allowed to ask Miss Thomas certain questions relating to her evidence given at the preliminary hearing. For example: "Q. Do you remember the circumstances you testified to

on the preliminary examination as to what took place upstairs on that Sunday in June, 1901, between you and Blair?" The answer to this question, as shown by the record, was: "I do not remember. No, sir." It appears that all like questions were answered by her in the same way. It is apparent that the witness was at least a reluctant one, and for that reason the form of the questions was permissible. It further appears that no attempt was made to show what her evidence, or any part of it, was on the preliminary hearing, and, as the questions contained no recital of such evidence, it is not apparent to us how the examination complained of could in any way prejudice the defendant's rights.

Complaint is made of the admission of certain parts of the evidence describing defendant's conduct in removing the prosecutrix from her home in the night time and concealing her at his house, when he knew she was wanted as a witness by the prosecution. It is contended that this evidence could have no tendency to prove the crime alleged to have been committed on the 5th day of February, 1903, and only had a tendency to prejudice the rights of the defendant. We think counsel have failed to comprehend the purpose for which this evidence was introduced. It is true that it constituted no direct proof of the specific act charged against the defendant, but evidence of such conduct is always admissible because it is inconsistent with the innocence of the accused. "Evidence is relevant to show that the accused has threatened or assaulted a witness, has endeavored to prevail on him to abscond, has procured his absence, has endeavored to induce him to testify falsely." 12 Cyc. 398.

In *State v. Keith,* 47 Minn. 559, 50 N. W. 691, it was said:

"It is a prejudicial circumstance, which may weigh heavily against one accused of crime, that witnesses were by him sent out of the state and kept away, so that their testimony might not be produced against him."

We therefore hold that all of the testimony connecting

the defendant in any way with removing the prosecutrix from her home and concealing her whereabouts from the prosecution was relevant, and therefore properly received. The fact that this was done with the consent, and at the request, of the prosecutrix does not rob it of its incriminating character, and the exclusion of her evidence showing such request and consent was not reversible error.

Error is assigned for allowing the witness Beulah Thomas to answer certain questions on redirect examination touching the actions of the defendant and her own conduct during her absence from home from the 22d of November to the 7th day of December following. We have examined the record, and find nothing improper in these questions; and, as the defendant has not pointed out to us any particular reason for his statement that they were prejudicial to his rights, we are unable to say that the court erred in allowing them to be asked and answered.

It is contended that the court erred in receiving certain evidence given by Mrs. Thomas, the mother of the prosecutrix. A part of the evidence complained of related to statements made by the defendant to herself and husband, when he was charged by them with having sexual intercourse with their daughter in the barn on February 5, 1903. This evidence was clearly competent; but the gist of the complaint is that the witness stated that a certain letter written by the prosecutrix, which seemed to connect the defendant with the transaction, was read to him at that time, and he was asked what he had to say about it. No statement was made to the jury of the contents of the letter, and as it was not introduced in evidence the defendant could not have been prejudiced by the form of these questions. The rest of the testimony of this witness related to the conditions existing at the barn on the 5th day of February, 1903, what she saw there, and what took place between defendant and her daughter on that occasion. This evidence was clearly competent, and was properly received.

Error is predicated for receiving certain parts of the

testimony of S. A. Thomas, the father of the prosecutrix. That which is particularly complained of was his statement that he swore out a warrant for Blair's arrest, and went down there with the deputy sheriff after him. This evidence, it is claimed, had no tendency to prove the crime charged. In answer to this criticism it is sufficient to say that it was not offered for that purpose, but was offered in connection with the actions of the defendant in concealing the witness at a time when he knew her evidence was necessary in order to proceed with his trial.

It is contended that the court erred in receiving the evidence of Lewis H. Bice, as to the conversations he had with the defendant when employed by him to take the prosecutrix from her home to Anderson's, together with the conduct of the witness and the accused, and the conduct of the accused toward the prosecutrix from the 20th of November, 1903, until the trial of this cause in January, 1904. And it is urged that such testimony could have no tendency to prove the crime with which the defendant was charged. It is apparent that the evidence of Mr. Bice was introduced as an incriminating circumstance tending to prove the crime charged, and for the purpose of showing the conduct of the defendant in secreting the prosecuting witness. All of this testimony was competent for that purpose. It is also said that the jury might not believe that the defendant committed the crime on the 5th day of February, 1903, but that on account of this evidence they might believe that he committed the crime Letween the 26th of November and the 7th day of December of that year. It is a sufficient answer to this objection to say that there was nothing in the testimony of the witness Bice from which any one could even infer that sexual intercourse had taken place between the accused and the prosecutrix during the time covered by his evidence.

Objection is also made to the testimony of the witnesses Meredith, Newman, Dorsey, Wilcox, and others, relating to the conduct of the accused and the prosecutrix toward each other. As was said in *People v. Castro*, 133 Cal. 11,

65 Pac. 13, evidence of improper familiarity may be received to prove the adulterous disposition of the parties implicated. While it is true the evidence of these witnesses does not directly establish the commission of the crime charged, yet, from the conduct of the parties described thereby, the jury might conclude that it was not improbable that the act of sexual intercourse had taken place between them, as charged. Such testimony would at least tend to corroborate the evidence of the prosecutrix, and corroborating facts and circumstances are always admissible, and should be introduced in evidence when available.

Complaint is also made because the court excluded the evidence of Mrs. Blair and others, offered for the purpose of showing that the prosecutrix had said to them, while she was concealed at the defendant's house, and at other times and places, that the accused had never wronged her, or misused her in any way, and the reason she did not go home was because her parents were trying to compel her to testify that she had criminal relations with the defendant; that such testimony was false, and that they threatened to punish her for not testifying as they wanted her to, which was to testify to that which was false. When this evidence was offered it was clearly incompetent. The prosecutrix had testified positively that the accused had never had sexual intercourse with her. The testimony offered in no manner tended to dispute her evidence. Therefore it was not competent, when offered, for any purpose. Again, it was hearsay evidence, and amounted, at that time, to nothing more than an attempt to corroborate the evidence of the prosecutrix by her own declarations.

It is further contended that the court erred in permitting counsel to ask the prosecutrix the questions which were propounded to her at the time she was recalled and testified as to the act of sexual intercourse between herself and the defendant on the 5th day of February, 1903, because they were unfair, unreasonable and leading, and,

in fact, suggested to the witness the answers desired. The only criticism which can be truthfully directed against this form of examination is that it was somewhat leading. We have often held that, where the witness clearly appears to be hostile or reluctant in giving testimony, the court in his discretion may permit the prosecution to propound leading questions. It is apparent from the record that the prosecutrix was not only a hostile witness, but also a most reluctant one. This no doubt because of her reluctance to publish her own shame. Therefore leading questions were proper and necessary in this case, and the court rightly so held.

We come now to the question of defendant's request for a continuance of the case, after the prosecutrix was recalled, to enable him to procure the attendance of witnesses to prove that she had told them at different times and places that the defendant had never had sexual intercourse with her at any time, had always treated her well, and never injured her in any way. This application for a continuance was overruled by the court, because it appeared that a large number of the witnesses desired for the purpose above mentioned were present in the court room, and if there were any other witnesses desired for that purpose their testimony would be merely cumulative; that there was no sufficient foundation laid, or showing made, for a continuance of the case. It appears from the record that James Carey, Ira Blair, James Oram, John Walsh, Mary Blair, A. B. Taylor and John Blair were called as witnesses for the purpose above mentioned; that they were all present in court, and testified to the fact that the prosecutrix had told them, at different times and places, that the defendant had always treated her well; had never injured her in any way, and had never had sexual intercourse with her at any time. Only three witnesses of all those subpœnaed by the defendant were absent and failed to testify on that point. When we take into consideration the statement of the prosecutrix that she did not remember whether she made those declarations to the

three absent witnesses, and further consider the fact that their evidence, if produced, would have been merely cumulative, we are constrained to hold that the denial of a continuance in no manner prejudiced the defendant's rights.

It is strenuously contended that the court erred in permitting the state to withdraw its rest after a part of the arguments were made, and recall the prosecutrix for further examination. That this is a matter committed to the sound discretion of the trial court there can be no question. *McClellan v. Hein,* 56 Neb. 600; *Hans v. State,* 50 Neb. 150; *Sieber v. Weiden,* 17 Neb. 582; *Gillette v. Morrison,* 9 Neb. 395; *Tomer v. Densmore,* 8 Neb. 384; *Chicago, B. & Q. R. Co. v. Goracke,* 32 Neb. 90; *Pence v. Uhl,* 11 Neb. 320.

In *Fremont, E. & M. V. R. Co. v. Crum,* 30 Neb. 78, the court said:

"It appears from the bill of exceptions that after the closing of the evidence, and the counsel on either side had addressed the jury, the counsel for defendant asked the court to instruct the jury to find for the defendant, on the ground that the plaintiff had not shown by the evidence that any one of the three fires alleged were upon the land described in the petition. Thereupon counsel for the plaintiff moved to reopen the case, to which defendant objected, and counsel stated that he would be unable to proceed with the trial if the case was then opened; which objection was overruled, the case was reopened and the plaintiff allowed to re-examine witnesses as to the locality of the railroad and that of the burned premises. * * * We see no reversible error in the action of the court; but it is not doubtful that it was within the discretion of the court, and tended to the impartial administration of justice and to the economy of litigation."

In *Yeoman v. State,* 21 Neb. 171, the court said:

"After the introduction of other witnesses the defense rested. The district attorney then recalled Amanda Yeoman 'for the purpose of cross-examination.' To this plaintiff in error at the time objected, but the objection was

overruled, to which he excepted, and now assigns the ruling for error. We are not informed whether there was any showing made upon the part of the state or not, but for the purposes of this case we will assume there was not; and yet we do not think there was such an abuse of discretion, if any, on the part of the court as to call for a reversal of the judgment on that ground. A certain reasonable discretion is allowed to the trial court in the conduct of the trial before it, and so long as it is not clear that that discretion has been abused to the prejudice of the party complaining, the action of the trial court will be upheld. In the matter now under consideration we can detect neither abuse of discretion nor prejudice to plaintiff in error."

It appears in the case at bar that after both parties had rested and the arguments had begun, the prosecutrix, of her own accord, sent word to the presiding judge that she desired to correct some misstatements in her former testimony; that she informed the sheriff, in whose custody she had been placed, of such desire; that she sent word to the county attorney that she wished to see him, and informed him, when he called upon her, that she desired to correct her former testimony. The nature of the proposed correction was imparted to the court, and it was clearly shown that she, using her own words, proposed to tell the truth about the matter in controversy. Under these circumstances it was proper for the court to reopen the case and receive her testimony. Refusal to have done so would have been an arbitrary exercise of his discretionary power, and would have resulted in a miscarriage of justice. After the prosecutrix had corrected her former evidence, the trial proceeded the same as though she had given such corrected testimony in the first instance. The defendant was then permitted to complete his defense, and in doing so introduced the evidence of the seven witnesses heretofore named, showing that the prosecutrix had, at other times and places, made statements contrary to her corrected evidence. The defendant was deprived of no substantial ele-

36

ment of his defense, and was at no time in any worse position than he would have been had her testimony, as corrected, been delivered when she was first called to the witness stand. The record discloses neither an abuse of discretion nor prejudice to the defendant.

Complaint is made because the court overruled the defendant's objection to the appearance of counsel, alleged to have been retained by private parties, to aid in conducting the prosecution. It is the common practice in this state to permit such counsel to appear whenever a request is made therefor. *Polin v. State*, 14 Neb. 540; *Bradshaw v. State*, 17 Neb. 147; *Gandy v. State*, 27 Neb. 707. It is stated, however, that the county attorney did not request the appointment of private counsel to assist him, and the court did not appoint the counsel for that purpose. On that question the record is silent. However, the fact that private counsel assisted the county attorney in the prosecution, with his entire sanction, raises a strong presumption of request and appointment. Again, the objection of the defendant to the appearance of such counsel was not made at the proper time, nor in an available manner. It appears that during the examination of the prosecutrix the objection was made, and the record on that question is as follows: "Q. I will ask you, Miss Thomas, if you were ever upstairs in this sleeping room when Mr. Blair came up there where you were, at any time in the year 1901 or 1902? Objected to. Incompetent. Immaterial. No evidence on the matter of her going upstairs; no foundation laid for question, and leading. Overruled. Defendant excepts. It is objected to attorneys Mr. Merton Meeker, Arthur G. Wray and Mr. Frederick C. Power, and each of them, appearing on the part of the state to prosecute this case, as the county attorney is here in his official capacity, able and ready to take part in the prosecution. Overruled. Defendant excepts." This was the only objection interposed to the appearance of such counsel. It will be observed that the objection was made during the trial, and in connection

with an objection to a question propounded to the prosecuting witness. No statement was made, or evidence offered, showing, or tending to show, that the prosecution had not requested the assistance of counsel, or that the court had not properly appointed them to render such assistance. Again, it is not apparent from an examination of the record that the part taken by assistant counsel in the prosecution of this case tended in any manner to prejudice the defendant's rights.

It is urged that the district court erred in giving instruction No. 6, which reads as follows: "6. The jury are instructed that the material allegations of the information upon which the defendant is prosecuted in this case are as follows: First. That the defendant John Blair, at the time of the intercourse with which he stands charged in the information, was a male person over the age of 18 years. Second. That said Beulah Thomas, at the time of the intercourse with which the prisoner stands charged in the information, was a female child under the age of 18 years. Third. That on or about the 5th day of February, 1903, and within three years prior to the 9th of January, 1904, the said defendant made an assault upon said Beulah Thomas, and did carnally know and abuse her. Fourth. That said Beulah Thomas, at the time of the intercourse with which the prisoner stands charged in the information, was chaste, as defined in these instructions. Fifth. That the crime charged in the information was committed in York county, and state of Nebraska, and since the 9th day of January, 1901, and prior to the 25th day of April, 1903."

The contention is that this instruction was erroneous and prejudicial to the rights of the defendant, in that it permitted the jury to find the defendant guilty of a crime of the character alleged in the information at any time up to and including the 9th day of January, 1904. Reading the several paragraphs of this instruction together, and giving the whole a fair construction, it is apparent that the jury could not have been misled thereby. Again, it is clearly and explicitly stated in the fifth subdivision

or paragraph that the jury must find that the crime charged in the information was committed in the county of York, and state of Nebraska, since the 9th day of January, 1901, and prior to the 25th day of April, 1903, which was the day on which the prosecution was begun. In considering the probable effect of this instruction, we must remember that there was no evidence before the jury of any act of sexual intercouse between the defendant and the prosecutrix except the one alleged to have occurred on the 5th day of February, 1903, which was within the dates above mentioned. That was the only act of sexual intercourse which the jury could have considered at all, and was the one for which the defendant was convicted. It follows that the instruction complained of was not misleading, and the defendant's criticism is untenable. *Ferguson v. State,* 52 Neb. 432; *Roma v. State,* 52 Neb. 375; *Palin v. State,* 38 Neb. 862.

Lastly, it is contended that the verdict of the jury and the judgment of the court are not sustained by sufficient evidence. It is impossible within the limits of this opinion to quote or even epitomize the evidence. It clearly appears that the prosecutrix, at the time of the alleged sexual intercourse, was a female child not quite 16 years of age; that the defendant was a male person over 18 years old; that the prosecutrix testified that she never had sexual intercourse with any man other than the defendant, and her evidence on that point being undisputed was sufficient to show her previous chastity. It further appears that she testified positively that the act of sexual intercourse took place between herself and the defendant on the 5th day of February, 1903, in the barn on her father's premises in York county, Nebraska. It also appears that her mother, at the time and place of this occurrence, saw her and the defendant in a compromising position; that for this reason her suspicions were aroused, and her belief in the rumors that had been going about the neighborhood of improper intimacy between the defendant and her daughter was confirmed. That when charged with such improper in-

timacy, the prosecutrix at first denied it, but afterwards admitted it to her mother.   There was also evidence of acts of unusual intimacy between the prosecutrix and the defendant extending over a period of about two years; and while none of such acts were in themselves sufficient to establish the fact of sexual intercourse, yet, as above stated, they were proper to be considered, as showing the adulterous disposition of the prosecutrix and the defendant toward each other.   The foregoing facts, and the circumstances surrounding the transaction in question, together with the conduct of the defendant, in removing the prosecutrix, about the time that his trial was coming on, from her home to Anderson's, in bringing her from Anderson's to his own home, where he kept her concealed from the 26th day of November to the 7th day of December, following, and only disclosed her whereabouts when charged with having her concealed in his house, and confronted with a warrant for his arrest therefor (conduct hardly consistent with his innocence), prevent us from saying that the evidence was not sufficient to support the verdict, and the jury was not justified in finding the defendant guilty, as charged in the information.   While it is true that the prosecutrix made different and conflicting statements on the witness stand, and elsewhere, yet, after all, the jury was the proper tribunal to determine the weight and credibility of her evidence, considered in the light of all of the other testimony, together with the incriminating conduct of the accused, and we are unable to say that the conclusion arrived at by that body was incorrect.

A careful review of the entire record discloses no reversible error, and therefore the judgment of the district court is

AFFIRMED.