UNITED STATES of America, Plaintiff,

v.

Milton HOWARD, Defendant.

Crim. No. 0490.

United States District Court
D. Nebraska.

May 1, 1964.

Theodore L. Richling, U. S. Atty., Dist. of Nebraska, Omaha, Neb., for plaintiff.

Robert C. Guenzel, Lincoln, Neb., for defendant.

VAN PELT, District Judge.

This matter was before the court on April 10, 1964 upon defendant's Motion for Judgment or Acquittal Notwithstanding the Verdict And, In The Alternative, For a New Trial. The points argued had been briefed and argued at the trial and following argument on the motion the court announced orally its rulings stating that this memorandum would be filed.

940

Defendant was indicted on two counts on February 24, 1960 by reason of a claimed narcotics transaction in Omaha, Nebraska, of November 19, 1959 with Edward Floyd Ellis. He was arrested on a complaint filed December 23, 1959 and released on bond for a hearing December 28, 1959. This hearing because of Ellis' death, was successively continued to December 30th and to December 31, 1959.

Thereafter, defendant was prosecuted for and convicted of first degree murder of Ellis and sentenced to life imprisonment.[1] The conviction was affirmed by the Nebraska Supreme Court on June 29, 1962. See Howard v. State, 174 Neb. 90, 116 N.W.2d 7, for many details not related here. In that opinion the court stated:

"On December 27, 1959, Edward Ellis and Dorothy Elliott were found dead in an upstairs apartment they shared. Each had been shot twice in the head, once with a 38-caliber bullet and once with a 22-caliber bullet. Each had died of the gunshot wounds.

"Edward Ellis, hereinafter referred to as Ellis was to have been a witness against the defendant Milton Howard, hereinafter referred to as Howard, on a federal complaint which charged Howard with selling narcotics to Ellis. Preliminary hearing on that complaint was set for December 28, 1959.

"Donald Williams, who confessed to being an accomplice in the killing, testified for the State that Howard told him on December 24, 1959, that it was worth $1,000 for Edward Ellis not to testify. Another witness, Rudolph Williams, testified he had been at the home of the defendant, Howard, on December 24, 1959, and while there heard Howard tell the defendant, Jerry Erving, hereinafter referred to as Erving, that Ellis had to go and it was worth $1,000." (174 Neb. at 92, 116 N.W.2d at 11.)

The actual shooting was done either by Donald Williams or Jerry Erving.[2]

The Supreme Court further stated:

"When Erving left Donald Williams that night he told Williams he would be by the next day with some money for him. The next day Erving stopped at Donald Williams' home and gave him $150. Later that day Howard came to the Donald Williams' home with Rudolph Williams. Howard told Donald Williams he had paid Erving and gave him $250, saying that would make a total of $500, less the $100 Erving said that Williams owed to him." (174 Neb. at 93, 116 N.W.2d at 11.)

■ In December, 1963 defendant who then and for a period prior had been confined to the Nebraska State Penitentiary, wrote the court demanding a speedy trial. Chief Judge Robinson transferred the case from Omaha to Lincoln and the writer on January 22, 1964 appointed counsel for the defendant, an indigent, and set the case for trial to the March, 1964 jury. Court-appointed counsel, unknown at the time to the court, had that week entered the Veterans' Administration Hospital in Lincoln. Upon a showing to the court that counsel would not be physically able to try the case in March, the court on February 20, 1964 withdrew the previous appointment and appointed Robert C. Guenzel of Lincoln and David A. Svoboda of Omaha as counsel and assigned the case for trial for March 30, 1964. At the request of defendant's counsel the trial date was advanced to March 23. The case came on

1. Under Nebraska law the jury having found the defendant guilty of first degree murder, also determined whether he should be electrocuted or given life imprisonment.

2. Defendant was allowed to subpoena Erving and Donald Williams as witnesses, both of whom testified that defendant had nothing to do with killing Ellis. Both on direct and redirect Williams stated his testimony was at variance with what he said in the murder trial when he had answered under duress.

for trial and the jury returned a verdict of guilty on both counts.

Both prior to arraignment and prior to empaneling of a jury defendant's counsel moved for dismissal, claiming that defendant had not been afforded the speedy trial guaranteed under the Constitution of the United States. These motions were overruled.

It has been held in this circuit that a period of four years between indictment and trial would not require dismissal. See Nolan v. United States, 8 Cir., 163 F.2d 768, cert. den. 333 U.S. 846, 68 S.Ct. 649, 92 L.Ed. 1130.

The Court of Appeals for this circuit has held also that the defendant must demand a trial before he can complain of violation of his constitutional rights to a speedy trial. Phillips v. United States, 8 Cir., 201 F. 259; Davidson v. United States, 8 Cir., 312 F.2d 163. Under this rule the defendant certainly has not been denied a speedy trial.

The authorities rather generally agree that the trial court has wide discretion in such a matter. The decisions further give importance to the fact that an accused is in custody of state authorities, if such is the case. The court concluded, and abides by that conclusion, that under the facts here presented the motion should be denied. The recent opinion by the Court of Appeals of this circuit in Bistram v. People, 1964, 330 F.2d 450, although not specifically in point, supports the conclusion here reached.

At the trial there arose an unusual evidence question and an exception was then noted to the court's ruling and the claimed error again urged in the motions heard April 10th.

It can be stated—Was the Government, as a part of its case in chief, entitled to prove that the defendant killed or procured the killing (In Nebraska an aider and abetter can be charged as a principal) of the informer named as the narcotics purchaser in the indictment on which defendant was being tried?

The court permitted evidence to be received of the complaint filed against defendant in the District Court of Douglas County, Nebraska and of the judgment including the verdict of guilty returned by the jury and the sentence. Testimony identifying Edward Floyd Ellis, named in the indictment, and Edward Ellis named in the murder complaint, was received as well as testimony showing that Howard had on December 24th learned the name of the informer. This was later corroborated by the witness Williams who was called on behalf of defendant.

The court told the jury when the evidence was received that Howard was not on trial here for the murder of Ellis; that this testimony was being received for the limited purpose only of indicating an act inconsistent with the presumption of innocence. In the charge the jury was again told:

"Evidence has been introduced herein showing the death of Edward Floyd Ellis; that he died of gun shot wounds of the head, and showing the conviction of the defendant Milton Howard of first degree murder in connection with the death of said Edward Floyd Ellis. Defendant Howard is not on trial in this case for the murder of Edward Floyd Ellis. This evidence has been received for a limited purpose only and is to be considered by you only insofar as an inference may arise therefrom of an admission of guilt or an act inconsistent with the innocence of the defendant to the charge on which he is on trial herein."

and at the conclusion of the charge was further told:

"Likewise, however, you must entirely disregard, and be utterly uninfluenced by, any inclination to which you may be tempted towards a personal prejudice against the defendant arising out of any consideration, and particularly out of the nature and character of the charge made against the defendant or out of the charge under which he is presently incarcerated."

■ It is elementary that admissibility of evidence in a criminal case in this court is to be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. See Rule 26, Federal Rules of Criminal Procedure.

It is probably well in the administration of justice that cases are difficult to find where a defendant has killed a prosecuting or complaining witness. One such is People v. Spaulding, 309 Ill. 292, 141 N.E. 196. It supports the court's ruling here.

The cases are nearly legion where a defendant has threatened,[3] or assaulted,[4] or secreted,[5] or otherwise endeavored to prevent the appearance of witnesses. The case cited in each footnote is only one of the many. Such evidence almost without exception has been held admissible.

■ The general rule is stated in Vol. 22A C.J.S. Criminal Law § 633, beginning at page 481 as follows:

"The rule of relevancy, * * * is to the effect that all evidence introduced in a criminal prosecution must be relevant to the guilt or innocence of accused, and such rule is not violated by the admission of evidence that accused attempted to suppress evidence against himself. Thus, fraud on the part of accused in the preparation or presentation of his case, such as * * * the destruction, * * * of evidence, * * * may be shown against him as an incriminating circumstance, inconsistent with innocence, and as tending to show a consciousness of guilt and that his cause lacks honesty and truth; and this, regardless of whether or not it be part of the res gestae, and even though it tends to establish the commission of an-

other crime by accused, as discussed infra § 687.

"On this basis, * * * evidence [is admissible] that accused * * * killed or attempted to kill the witness * * * *."

Within this circuit, the court found two cases which had a bearing on the court's ruling.

Judge Devitt in the case of United States v. Segal, D.C., 147 F.Supp. 506, (affirmed 246 F.2d 814, cert. denied 355 U.S. 894, 78 S.Ct. 269, 2 L.Ed.2d 192), had before him the matter of an attempt to persuade a witness to leave town. The evidence was held admissible as another form of suppressing evidence. The Court of Appeals of this Circuit in the case of Carnahan v. United States, 8 Cir., 35 F.2d 96, (cert. denied 281 U.S. 723, 50 S.Ct. 238, 74 L.Ed. 1141) had before it an attempt to put a prospective witness beyond the jurisdiction of the court and held that it could be shown.

It seems logical and consistent to the court that if an attempt to put a witness beyond the jurisdiction of the court can be shown, then the permanent prevention of the witness from testifying by arranging for his murder can also be shown. It makes little difference whether it is called destruction of evidence, suppression of evidence, destroying the presumption of innocence, or by some other name. It is the state of mind which Wigmore says " * * * we call 'guilty consciousness' [which] is perhaps the strongest evidence * * * that the person is indeed the guilty doer; * *." Vol. II, Wigmore on Evidence, § 273, p. 106.

■ It seems to this court that a defendant's act of procuring the murder of or murdering the chief witness against him in a pending criminal case evidences a weak defense and the jury could properly consider it insofar as it would help

---

3. Bowman v. United States, 50 App.D.C. 90, 267 F. 648.

4. Hass v. United States, 9 Cir., 31 F.2d 13, cert. denied 279 U.S. 865, 49 S.Ct. 480, 73 L.Ed. 1003.

5. Blair v. State, 72 Neb. 501, 101 N.W. 17.

to destoy the presumption of innocence. The court believes that the evidence was properly admitted and the defendant's rights properly safeguarded in the cautionary instructions. The motion stands overruled.