353 So.2d 989 (1977)
STATE of Louisiana
v.
Walter BURNETTE and James Granger.
No. 60053.
Supreme Court of Louisiana.
December 19, 1977.
Rehearing Denied January 27, 1978.
*990 James J. Gleason, III, Public Defender, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Woodrow W. Erwin, Dist. Atty., Julian J. Rodrigue, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
Defendants Walter Burnette and James Granger were charged by indictment with the aggravated kidnapping of Tracey Johnson. La.R.S. 14:44. After a trial by jury, defendants were found guilty and were sentenced to the custody of the Department of Corrections for the rest of their natural lives. Defendants have appealed, relying upon forty assignments of error.
We find reversible error in assignment number 21 and thus pretermit consideration of the other assignments.
On the evening of December 8, 1972 the two defendants and several other persons were in the Black Hat Lounge on Highway 190, south of Covington. Among those present, besides the defendants, were the victim, Tracey Johnson, a woman of about thirty, and her companion, Bill Mulvey, as well as Larry Saltzman and Lucille Gibbons. The State's theory of the case was that the defendants, who suspected that Johnson and Mulvey had been sent to kill them by a third person, lured the victims away from the lounge to a remote spot where Mulvey was killed and Johnson was kidnapped. Johnson was taken to Mississippi and murdered, but this case involves only a prosecution for kidnapping.
Defendants contend that the trial court erred in refusing to declare a mistrial when the prosecuting attorney referred twice in rapid succession to other crimes allegedly committed by the defendants. During his opening statement to the jury, the prosecuting attorney stated:
"A few days after the kidnapping, the trailer of Lucille Gibbons, who was present at the time, the night of December 7, in the Black Hat, was shot up with more than 60 bullet holes in it while she and her young daughter were in it.
"Sometime during the year 1973, the defendant, Walter Burnette, came from Houston, Texas to Ponchatoula, Louisiana, for the expressed purpose of killing Larry Saltzman."
At this point, defense counsel moved for a mistrial under Louisiana Code of Criminal Procedure Article 770, which provides that "a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the . . . district attorney, . . . during the trial or in argument, refers directly or indirectly to; . . . another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible; * * *." The trial judge's denial of the motion forms the basis for the instant assignment of error.
On appeal, the State urges that the remarks of the prosecutor were not sufficient to mandate a mistrial because attempts on the lives of witnesses are admissible to show the defendant's consciousness of guilt. Although this exception to the inadmissibility of other-crimes evidence has never been expressly recognized in Louisiana, an analogous situation was presented in State v. Graves, 301 So.2d 864, 866 (La.1974). In that case, the defendant contended that the trial court erred in allowing introduction of evidence tending to show that he had attempted to influence the testimony of witnesses. This Court upheld the ruling of the trial court, stating:
"Defense counsel argues that the remark of the prosecutor referring to the alleged intimidation of a witness is evidence of another crime, inadmissible at *991 the trial because of its unduly prejudicial effect. He relies upon State v. Moore, 278 So.2d 781 (La.1973) and State v. Prieur, 277 So.2d 126 (La.1973). Generally speaking, these cases stand for the proposition that evidence of other crimes to prove knowledge, system or intent is inadmissible when its relevance is outweighed by its prejudicial effect. To support its position, the defense also urges that Article 770 of the Code of Criminal Procedure requires that a mistrial be ordered when a remark or comment, made within the hearing of the jury by the district attorney, refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
"The authority relied upon is not pertinent here. Although an attempt to bribe or influence a witness is a criminal offense under Louisiana law, La.R.S. 14:118, an attempt by an accused in a criminal prosecution to induce a witness to testify falsely may be introduced in evidence against him. This evidence is admissible since it leads to an inference that, if admitted, it would operate unfavorably to the accused. Similarly, an attempt to fabricate evidence is receivable in a criminal prosecution as evidence of one's guilt of the main facts charged, such fabrication being in the nature of an admission. State v. Rohfrischt, 12 La. Ann. 382 (1857); Staggs v. State, 51 Ala. App. 203, 283 So.2d 652 (Ala.Cr.App. 1973); Curtis v. State, 44 Ala.App. 63, 202 So.2d 170 (1967); Davis v. Commonwealth, 204 Ky. 601, 265 S.W. 10 (1924); People v. Hooper, 50 Mich.App. 186, 212 N.W.2d 786 (1973); State v. Ettenberg, 145 Minn. 39, 176 N.W. 171 (1920); State v. Christian, 245 S.W.2d 895 (Mo.1952); State v. Minton, 234 N.C. 716, 68 S.E.2d 844 (1952); State v. Reuschel, 131 Vt. 554, 312 A.2d 739 (1973); 29 Am.Jur.2d, Evidence, ¶¶ 292 & 293. Before such attempts are admissible, however, there must be some evidence to connect the accused therewith or to show that the attempt by a third person was made with the authorization of the accused. People v. Terry, 57 Cal.2d 538, 21 Cal.Rptr. 185, 370 P.2d 985 (1962), cert. denied, 375 U.S. 960, 84 S.Ct. 446, 11 L.Ed.2d 318 (1963)."
Further, an examination of the relevant jurisprudence from other jurisdictions reveals that evidence of threats or attempts on the lives of witnesses is a well-recognized exception to the general rule that evidence of other crimes is not admissible.[1] See, United States v. Cirillo, 468 F.2d 1233 (2d Cir. 1972); United States v. Howard, 228 F.Supp. 939 (D.Neb.1964); State v. Valenzuela, 109 Ariz. 1, 503 P.2d 949 (1973); *992 State v. Hill, 47 N.J. 490, 221 A.2d 725 (1966); State v. Johnson, 394 S.W.2d 344 (Mo.1965); People v. Terry, 21 Cal.Rptr. 185, 370 P.2d 985 (1962); State v. Arnold, 130 Wash. 370, 57 Cal.2d 538, 227 P. 505 (1924); People v. Spaulding, 309 Ill. 292, 141 N.E. 196 (1923); Sapp v. State, 87 Tex.Cr.R. 606, 223 S.W. 459 (1920); State v. Matthews, 202 Mo. 143, 100 S.W. 420 (1907); State v. Rozum, 8 N.D. 548, 80 N.W. 477 (1899); Wigmore on Evidence, § 278 (3d ed. 1940).
As these cases indicate, actions by the defendant which are designed to prevent witnesses from testifying give rise to an inference that the defendant acted from an awareness or consciousness of his own guilt. Such evidence, much like the bribery attempt in Graves, supra, has substantial probative value in a proceeding designed to test the guilt or innocence of an accused. For this reason, the question of whether the evidence should be admitted has been almost universally answered in the affirmative.
Recognizing, however, that the admission of such other-crimes evidence poses a substantial threat of prejudice to the accused, other jurisdictions which allow the admission of the evidence have imposed certain strictures upon its use. Generally stated, the prevailing rule is that the state must present substantial evidence tying the threats, intimidation, or acts of physical violence to the accused.[2] McCormick explains the standard to be applied:
"In the first place, it is clear that the other crime, when it is found to be independently relevant and admissible, need not be established beyond a reasonable doubt, either as to its commission or as to defendant's connection therewith, but for the jury to be entitled to consider it there must of course be substantial evidence of these facts, and some courts have used the formula that it must be `clear and convincing.' And it is believed that before the evidence is admitted at all, this factor of the substantial or un-convincing quality of the proof should be weighed in the balance." [footnotes omitted][3]
Moreover, even where the trial judge finds the other-crimes evidence has substantial independent relevance, he is empowered to exclude such evidence if in his judgment its probative value for this purpose is outweighed by the danger that it will "stir such passion in the jury as to sweep them beyond a rational consideration of guilt or innocence of the crime on trial." McCormick on Evidence, § 190, p. 454 (2d ed. 1972); People v. McKinney, 24 N.Y.2d 180, 299 N.Y.S.2d 401, 247 N.E.2d 244 (1969); State v. Gilligan, 92 Conn. 526, 103 A. 649 (1918); cf. State v. Frederick, 340 So.2d 1353 (La.1976); State v. Gaines, 340 So.2d 1294 (La.1976); State v. Clark, 338 So.2d 690 (La.1976); State v. Moore, 278 So.2d 781 (La.1973). A clearly erroneous decision on this question of balancing probative value against danger of prejudicial effect will be corrected on appeal as an abuse of discretion.
Thus, a trial court in determining the admissibility of evidence of other criminal acts of the accused, constituting admissions by conduct, intended to obstruct justice or avoid punishment for the present crime, must decide outside the jury's presence and in advance of the introduction of the evidence whether (1) the evidence fits the class of evidence constituting such admissions by conduct; (2) there is substantial evidence that the defendant committed the other crimes; and (3) the probative value of such other crimes evidence will outweigh its prejudicial effect. If the other crimes evidence fails to pass any of these three tests it must be excluded.
The correct application of this three-pronged inquiry, in advance of the introduction of the other crimes evidence and out of *993 the jury's presence, is crucial in a situation such as is presented in the instant case. For if evidence is referred to in the jury's presence which does not meet the criteria outlined above, it will constitute a reference by the prosecuting attorney to "another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible" and a mistrial will be mandatory upon motion of the defendant.[4]
In the case at bar, the prosecuting attorney referred to two crimes allegedly committed by the defendants: the shooting which occurred at the trailer of the witness, Lucille Gibbons, and an attempted murder of the accomplice-witness Larry Saltzman by Walter Burnette.[5] At the trial on the merits, no evidence was introduced to link the defendants to either offense. In fact, no evidence was presented to establish that Burnette actually made the alleged trip from Houston or that he ever took any step with the intent to kill Saltzman so as to constitute an essential element of the crime of attempted murder.[6] Further, during the testimony of Mrs. Gibbons, in a discussion out of the presence of the jury, the prosecuting attorney conceded to the court that he had no evidence whatever which would in any way connect the defendants with the trailer shooting incident. Under these circumstances, the evidence as to the alleged attempts on witnesses was inadmissible, and the trial judge fell into error when he failed to declare a mistrial pursuant to the mandate of Article 770. Since the other crimes evidence referred to in the State's opening statement was never introduced, we do not reach the question of whether its prejudicial effect would have outweighed its probative value.
The State argues that its groundless accusations in the presence of the jury that the defendants had made attempts on the lives of prosecution witnesses should be disregarded as "harmless error." In considering such an argument we are bound by the legislative intention of Louisiana Code of Criminal Procedure Article 921, which provides:
"A judgment or ruling shall not be reversed by an appellate court on any ground unless in the opinion of the court *994 after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right."
Although this law is expressed in the negative, it clearly imposes an affirmative obligation upon this Court to reverse a conviction whenever it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right. Since the defendants were deprived of a mistrial which the legislature has expressly stated "shall be ordered," La.C.Cr.P. art. 770, there undoubtedly was a substantial violation of a statutory right. The prosecution's case relied heavily on the testimony of Larry Saltzman, who claimed to have been with the defendants at the time of the crimes, but whom the State freely admitted had been granted immunity for his testimony. Saltzman's testimony alone, if believed by the jury, would have been sufficient to form the basis of the convictions. However, Saltzman was forced to admit in the jury's presence that he had been convicted of burglary seven times, that he had been engaged in marijuana trafficking, that Burnette had "ripped him off" for more than $15,000, that he would lie if it were to his advantage, and that he had been granted immunity in return for his testimony against Burnette and Granger. In short, there were reasonable grounds for jurors to question Saltzman's credibility as a witness, and if the jurors did not believe Saltzman's story there was a substantial basis for them to have reasonable doubts as to the guilt of the defendants. Therefore, the prosecuting attorney's remarks to the jury in which he broadly implied that the defendants had attempted to kill two prosecution witnesses in order to obstruct justice and avoid punishment for the crimes for which they were on trial can hardly be regarded as insignificant. Although the State did not in fact have any substantial evidence that defendants had made such attempts, the jury was in all likelihood led to believe that such evidence did exist. None of the other evidence in the case corroborated Saltzman's testimony as directly or as effectively as the prosecuting attorney's remarks which in effect accused the defendants of attempting to cover up cold blooded homicides with even more deliberate murders. None of the other evidence presented as great a danger of inflaming the passion of the jury. Accordingly, we cannot in all candor say that the remarks of the prosecuting attorney were not prejudicial or that they could not have been the deciding factor in the jury reaching verdicts of guilty.
The State's brief, nevertheless, seemingly urges us to weigh the evidence and affirm the convictions because the evidence is overwhelmingly in favor of conviction. But our constitution prohibits this Court from deciding the factual question of guilt or innocence and restricts our scope of review to questions of law in criminal cases. La.Const.1974, Art. 5, § 5. Thus, it would be a violation of the constitution and our oaths to weigh the evidence or to decide upon the question of guilt or innocence or to disregard reversible errors of law. Consequently, we are not allowed to speculate as to what verdict the jury would or should have reached had the prosecuting attorney not made his improper remarks referring to the inadmissible, but nevertheless very damning, other crimes evidence; instead, we are required to review the record for reversible errors of law and to declare them when found.
Accordingly, we conclude that the prosecuting attorney's remarks referring to other offenses supposedly committed by the defendants, in support of which the State actually was not prepared to prove or even present substantial evidence, were unlawful and highly prejudicial, and that the trial judge fell into reversible error in refusing to grant a mistrial as required by law. For these reasons the defendants' convictions and sentences are reversed and the case is *995 remanded for a new trial consistent with this opinion.
SANDERS, C. J., and SUMMERS and MARCUS, JJ., dissent.
NOTES
[1] An early Illinois case, People v. Spaulding, 309 Ill. 292, 305-6, 141 N.E. 196, 202 (1923), discussed the historical antecedents of the exception:

"From the days of Moses to the present time it has been the law that a person who fabricates, suppresses, or destroys evidence must take the consequences of the honest indignation which his conduct naturally excites. Moses declared, `Cursed be he that removeth his neighbor's landmark.' Deut. 27, 17. Modern decisions establish the rule that all efforts by either party to a suit, directly or indirectly, to destroy, fabricate, or suppress evidence, may be shown as a circumstance indicating that the party's cause is an unrighteous one. Winchell v. Edwards, 57 Ill. 41; Chicago City Railway Co. v. McMahon, 103 Ill. 485, 42 Am.Rep. 29; Tanton v. Keller, 167 Ill. 129, 47 N.E. 376; 1 Wigmore on Evidence (2d Ed.) § 278; Burrill on Circumstantial Evidence, 419. Evidence that the accused has attempted to destroy evidence against himself is always admissible for the purpose of showing consciousness of guilt (People v. Fox, 269 Ill. 300, 110 N.E. 26), as is also evidence tending to show an attempt to bribe witnesses (State v. Constantine, 48 Wash. 218, 93 P. 317; Commonwealth v. Min Sing, 202 Mass. 121, 88 N.E. 918; State v. Huffman, 86 Ohio St. 229, 99 N.E. 295, Ann.Cas. 1913D, 677). In People v. Roberts, 306 Ill. 240, 137 N.E. 802, evidence showing that the defendant arranged for the conveyance out of the state of the prosecuting witness and gave her money to remain away from the county during the trial was considered admissible for the purpose of showing consciousness of guilt. State v. Keith, 47 Minn. 559, 50 N.W. 691, and Blair v. State, 72 Neb. 501, 101 N.W. 17, are similar cases, and the holdings are the same. In Bowman v. United States, 50 App.D.C. 90, 267 F. 648, the defendant was convicted of murder. It was held proper to prove that he had threatened to kill the only eye-witness to the murder and that he had assaulted the witness with intent to kill."
[2] In Louisiana, a similar standard was applied by this Court in Graves, supra. There, the majority noted that "before such attempts are admissible . . . there must be some evidence to connect the accused therewith." 301 So.2d at 866.
[3] McCormick on Evidence, § 190, at 451-2 (2d ed. 1972).
[4] Louisiana Code of Criminal Procedure Article 770 provides:

"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
"(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
"(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
"(3) The failure of the defendant to testify in his own defense; or
"(4) The refusal of the judge to direct a verdict.
"An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial."
[5] We are cognizant of the fact that, in discussing the attempt on Mrs. Gibbons, the prosecutor did not refer directly by name to the defendants. Further, it is at least arguable that coming "from Houston, Texas, to Ponchatoula, Louisiana, for the expressed purpose of killing Larry Saltzman" may not involve sufficient proximity to completion of the offense to constitute attempted murder. Article 770, however, expressly speaks of comments which refer "directly or indirectly" to other crimes allegedly committed by defendants, and a reading of the transcript of the opening statement imparts the unquestionable impression that the defendants are being accused, in the presence of the jury, of two separate instances of attempted murder.
[6] The State's only evidence even related to such an attempt by Burnette was by direct examination of Saltzman:

"Q. Did Walter ever threaten you?
A. Yes, me and my family and everything.
Q. How did he threaten you?
A. Going to have me killed, and have my family killed, my little girl, things like that."
This evidence of a threat to have Saltzman killed is insufficient to qualify as substantial evidence of the attempted murder at least indirectly or impliedly referred to by the prosecuting attorney in his opening statement to the jury.