STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT


DOCKET NUMBER
2024 KA 0069


STATE OF LOUISIANA

VERSUS

CASSANOVA K. CARTER

Judgment Rendered: **NOV 1 3 2024**


* * * * *


ON APPEAL FROM THE
EIGHTEENTH JUDICIAL DISTRICT COURT, DIVISION A
IN AND FOR THE PARISH OF POINTE COUPEE
STATE OF LOUISIANA
DOCKET NUMBER 84,428-F

HONORABLE J. KEVIN KIMBALL, JUDGE PRESIDING


* * * * *


Jane L. Beebe                          Attorney for Defendant-Appellant
Louisiana Appellate Project            Cassanova K. Carter
Addis, Louisiana




Antonio M. "Tony" Clayton              Attorneys for Appellee
District Attorney                      State of Louisiana
Terri Russo Lacy
Assistant District Attorney
Port Allen, Louisiana




**BEFORE: WOLFE, MILLER, and GREENE, JJ.**

**GREENE, J.**

The State charged the defendant, Cassanova K. Carter,[1] with attempted second degree murder (count one), a violation of La. R.S. 14:27 and La. R.S. 14:30.1(A)(1), and with possession of a firearm by a person convicted of certain felonies (count two), a violation of La. R.S. 14:95.1. The defendant pled not guilty. After a jury trial, the jury found him guilty as charged on both counts. The trial court sentenced him to 20 years imprisonment on count one, and to 20 years imprisonment at hard labor, without the benefit of probation, parole, or suspension of sentence on count two, to be served consecutively.[2] The defendant now appeals, assigning error to the sufficiency of the evidence, the denial of his motions for mistrial, the imposition of consecutive sentences, and the omission from the record of a key witness's testimony. After review, we affirm the convictions, vacate the sentences, and remand for resentencing.

## FACTS

On April 4, 2021, at 11:52 p.m., Officer Derrick Poirrier of the New Roads Police Department (NRPD) responded to a shooting at 619 Martin Drive in New Roads. After entering the residence, Officer Poirrier found Quincy Reed conscious on the living room floor, in a large pool of blood, suffering from multiple gunshot wounds. Mr. Reed told Officer Poirrier he had been shot by the defendant, his nephew. Mr. Reed was transported to Pointe Coupee General Hospital, where he gave a recorded police statement, again identifying the defendant as the person who shot him.

## SUFFICIENCY OF THE EVIDENCE

In assignment of error number one, the defendant argues the evidence presented at trial was insufficient to support the convictions. He claims that, while Mr. Reed initially identified him as the shooter, Mr. Reed recanted this claim at trial.

---

[1] The defendant's first name is often spelled "Casanova" in the record. The correct spelling is "Cassanova," as shown by his signature on an affidavit found in the record.

[2] At the sentencing hearing, the trial court failed to restrict benefits or impose the sentence at hard labor on count one, as mandated by La. R.S. 14:27(D)(3) and La. R.S. 14:30.1(B). Although the minutes and commitment order conflict with the sentencing transcript, the hearing transcript prevails. *See State v. Lynch*, 441 So.2d 732, 734 (La. 1983); *State v. Dufrene*, 2022-0762 (La. App. 1 Cir. 4/14/23), 365 So.3d 837, 839, n.2. Further, under La. R.S. 15:301.1(A), any applicable "without benefit" provision is self-activating. *See State v. Howard*, 2018-0317 (La. App. 1 Cir. 9/21/18), 258 So.3d 66, 72, n.1, *writ denied*, 2018-1650 (La. 5/6/19), 269 So.3d 692. Nonetheless, as we conclude in the patent error discussion, the sentences must be vacated on jurisdictional grounds.

A conviction based on insufficient evidence cannot stand, as it violates due process. *See* U.S. Const. amend. XIV; La. Const. art. I, §2. The standard of review for sufficiency of the evidence to support a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the State proved the essential elements of the crime, and the defendant's identity as the perpetrator of that crime, beyond a reasonable doubt. *See* La. C.Cr.P. art. 821(B); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Currie*, 2020-0467 (La. App. 1 Cir. 2/22/21), 321 So.3d 978, 982.

The *Jackson* standard of review, incorporated in La. C.Cr.P. art. 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. *State v. Welch*, 2019-0826 (La. App. 1 Cir. 2/21/20), 297 So.3d 23, 27, *writ denied*, 2020-00554 (La. 9/29/20), 301 So.3d 1193. When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. *State v. Coleman*, 2021-0870 (La. App. 1 Cir. 4/8/22), 342 So.3d 7, 12, *writ denied*, 2022-00759 (La. 11/21/23), 373 So.3d 460. When the direct evidence is thus viewed, the facts established by the direct evidence, and the facts reasonably inferred from the circumstantial evidence, must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *Id.* When analyzing circumstantial evidence, La. R.S. 15:438 provides the factfinder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. When a case involves circumstantial evidence and the factfinder reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. *Welch*, 297 So.3d at 27.

Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). The gravamen of attempted second degree murder is the specific intent to kill and the

3

commission of an overt act tending toward the accomplishment of that goal.[3] *See* La. R.S. 14:27; La. R.S. 14:30.1(A)(1); *State v. Griner*, 2019-0322 (La. App. 1 Cir. 9/27/19), 2019 WL 4731973, *3, *writ denied*, 2019-01984 (La. 7/24/20), 299 So.3d 68. Specific criminal intent is that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1).

Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. *Welch*, 297 So.3d at 27. Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the factfinder. Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. Further, unless there is internal contradiction or irreconcilable conflict with the physical evidence, the testimony of a single witness, if believed by the factfinder, is sufficient to support a factual conclusion. *Id.*

Under La. R.S. 14:95.1(A), it is unlawful for any person who has been convicted of certain felonies to possess a firearm. To prove a violation of La. R.S. 14:95.1, the State must prove the defendant's status as a convicted felon and that the defendant was in possession of a firearm.[4] The State must also prove that 10 years have not elapsed since the date of completion of the punishment for the prior felony conviction. La. R.S. 14:95.1(C); *State v. St. Cyre*, 2019-0034 (La. App. 1 Cir. 12/19/19), 292 So.3d 88, 113, *writ denied*, 2020-00142 (La. 5/26/20), 296 So.3d 1063.

When the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable

---

[3] The statute for the completed crime of second degree murder, La. R.S. 14:30.1(A)(1), allows for a conviction based on specific intent to kill *or* to inflict great bodily harm; however, attempted second degree murder requires specific intent to kill. *State v. Collins*, 2009-2102 (La. App. 1 Cir. 6/28/10), 43 So.3d 244, 251, *writ denied*, 2010-1893 (La. 2/4/11), 57 So.3d 311, *cert. denied*, 565 U.S. 818, 132 S.Ct. 99, 181 L.Ed.2d 27 (2011).

[4] Possession of a firearm by a convicted felon is a general intent crime. *State v. Hills*, 2010-1521 (La. App. 1 Cir. 3/25/11), 2011 WL 1103455, *7, *writ denied*, 2011-1120 (La. 11/14/11), 75 So.3d 940. General intent is present when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(2).

4

probability of misidentification. A positive identification by only one witness is sufficient to support a conviction. *State v. Bessie*, 2021-1117 (La. App. 1 Cir. 4/8/22), 342 So.3d 17, 23, *writ denied*, 2022-00846 (La. 9/20/22), 346 So.3d 802. In this case, the defendant only challenges the evidence of his identity as the perpetrator, not the elements of the offenses.[5]

At trial, Officer Poirrier testified he entered the residence through the carport door, which led to the kitchen, where he observed shell casings in the kitchen and hallway leading to the bedrooms. After Mr. Reed told him the defendant shot him, Officer Poirrier relayed that information to dispatch, also noting the defendant had left the scene.[6] The day after the shooting, Officer Poirrier collected a bullet from the living room couch. Personnel of the Louisiana State Police Crime Laboratory (LSPCL) processed the scene and collected the other ballistics evidence.

Michelle Cazes-Olinde, a LSPCL crime scene investigator and firearms analyst, testified that six .40 caliber cartridge cases, three copper-jacketed bullets, a damaged copper bullet jacket, and a damaged lead core were collected in the kitchen, hallway, living room, and by the front door. While the damaged lead core was not suitable for comparison, Ms. Olinde concluded the casings, bullets, and the copper bullet jacket were ejected or fired from the same unknown firearm, consistent with a .40 caliber Smith and Wesson firearm. Notably, no firearm was recovered in this case.

NRPD Officer James Johnson videoed Mr. Reed's statement at the hospital. Officer Johnson questioned Mr. Reed while he was in the emergency room with life threatening injuries. He asked Mr. Reed what happened, and he responded he "got shot." When Officer Johnson asked Mr. Reed who shot him, Mr. Reed stated, "Cassanova Carter." Finally, Officer Johnson asked Mr. Reed if Cassanova was his nephew, and he responded positively. About a week later, while still hospitalized but

---

[5] Though not contested on appeal, we note the State presented evidence at trial to show the defendant was previously convicted in 2010 of possession of marijuana with intent to distribute, violated his probation in 2011, and at that point was ordered to serve his sentence of five years imprisonment at hard labor.

[6] Carla Beauvais, the communications supervisor and director of communications at the Pointe Coupee Sheriff's Office, identified the audio of the 911 call and the call dispatch notes introduced by the State, showing that Officer Poirrier indicated the defendant was identified as the shooter at the scene.

no longer in critical condition, Mr. Reed again identified the defendant as the person who shot him.

However, before trial, Mr. Reed signed a notarized, handwritten statement at the New Roads Police Department stating the defendant did not shoot him. Further, at trial, Mr. Reed testified he could not recall what happened the night of the shooting.[7] Mr. Reed confirmed the defendant had lived with him at the residence where he was shot and stated they were very close. Though he recalled his statements to the police identifying the defendant as the shooter, he testified he did not know who shot him, as he only saw "a vision" at the time of the shooting. When asked if any of the conflicting statements had been truthful, he testified, "I'm not sure. All I seen was a vision."

The State introduced and played a recorded jail phone call between the defendant, then incarcerated, and Mr. Reed wherein the defendant offered Mr. Reed his vehicle. The defendant told Mr. Reed he would be subpoenaed to go to court to "say whatever [he] need[ed] to say." The defendant further said he was trying to "keep a little deal" so he could come home. He asked Mr. Reed to give him his word so he could "stop stressing about this s***." Mr. Reed repeatedly told the defendant, "I got you."

During the jail phone call, the defendant also told Mr. Reed to "stay off them pills" or at least not to "over do it." Mr. Reed agreed, and said he realized the pills "change everything about you." The defendant recalled how he and Mr. Reed were talking "perfectly fine" the weekend before the shooting, but subsequently someone accused him of being "on the run" for shooting his own uncle. The defendant said he could not believe it, further noting no one could say what triggered the shooting, and said it should not have happened. The defendant then recalled a rumor that Mr. Reed planned to kill the defendant and his children, and said this probably would have been what "triggered me." Mr. Reed told the defendant that, when he received the subpoena, he would "be there."

---

[7] Upon additional questioning, Mr. Reed stated he wished to exercise his "Fifth Amendment right." The State then offered Mr. Reed immunity, precluding use of his testimony for potential charges against him, such as perjury. Mr. Reed accepted the offer and continued his testimony.

When questioned at trial about a reference to drugs in the jail phone call, Mr. Reed labeled himself "a real bad drug user." According to his testimony, his drugs of choice were Ecstasy pills at the time of the shooting and methamphetamine at the time of the trial. Mr. Reed conceded he did not want to testify against the defendant and when asked if he loved the defendant, he testified, "I love him to death." He denied ever receiving a vehicle, money, or any gifts from the defendant, though he recalled previously stating he received cigarettes. However, when asked what the defendant meant when he asked Mr. Reed for his word, Mr. Reed testified the defendant admitted to shooting him. When asked if he forgave the defendant and wanted to move on, he testified, "I just want to go back to Lufkin, Texas." Mr. Reed confirmed he told the prosecutor or someone in her office, just one week before trial and again on the day of trial, that the defendant was the person who shot him.

On cross examination, Mr. Reed agreed his drug use had a lot to do with his alleged uncertainty regarding who shot him. He noted it caused him to hallucinate and hear voices other people did not hear, adding, "[i]n fact, I hear them right now." Mr. Reed specified he had been diagnosed as a bipolar schizophrenic and first began hearing voices when he was 15 years old.[8] He agreed he made false allegations against the defendant in the past. However, when asked if any favors offered by the defendant to him would have been made in an effort to influence his testimony, Mr. Reed testified, "[t]hat's what really happened." He repeatedly added, "I am telling the truth."

The State also introduced a jail phone call between the defendant and his girlfriend, Keiah Groom (also known as Keiah Carter), in which the defendant said he was putting pressure on Mr. Reed and trying to stay on his "good side." He further said it seemed Mr. Reed would keep his word. The State introduced a separate recorded jail phone call made by Mr. Reed, who was incarcerated at the time, to the defendant the day before Mr. Reed's trial testimony. The defendant told Mr. Reed he put $50 on Mr. Reed's books. Mr. Reed asked the defendant to bond him out "if everything don't go as

---

[8] The defense also introduced Mr. Reed's medical records to show he tested positive for methadone, methamphetamines, and benzodiazepine while at Our Lady of the Lake Hospital on April 5, 2021, and that he was treated with Narcan, a drug used after an overdose.

7

planned." A female, presumably Ms. Groom, then participated in the phone call, telling Mr. Reed, "if everything go how [y'all] had talked about, then everything good." Mr. Reed then appeared to reassure her, stating, "everything good."

Finally, the State introduced jail deposit lists and inmate text messages. The documentation showed Mr. Reed received a deposit of $44 on July 7, 2023 (three days before the trial began on July 10, 2023, and four days before Mr. Reed's July 11, 2023 testimony), two text messages from Ms. Groom telling him to call, another deposit of $44 on July 10, 2023, and a text message from Ms. Groom stating, "money on the account."

When there is conflicting testimony about factual matters, the resolution of which depends upon a determination of witness credibility, the matter is one of the weight of the evidence, not its sufficiency. *Bessie*, 342 So.3d at 23. Accordingly, on appeal, this Court will not assess the credibility of witnesses or reweigh the evidence to overturn a factfinder's determination of guilt. *Id.* Further, an appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the factfinder. *Welch*, 297 So.3d at 29. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. *Id.*

On appeal, the defendant argues the police rushed to judgment, investigated no one else as Mr. Reed's shooter, and points out that no gun was found. He contends there was a reasonable hypothesis of innocence that the people who supplied or sold drugs to Mr. Reed "had a beef with him and shot him." However, the jury heard testimony regarding Mr. Reed's drug use and apparently rejected any such hypothesis of innocence. The ballistics evidence was consistent with the involvement of one shooter. The jury was presented with testimony, the 911 call, the 911 call dispatch notes, and Mr. Reed's videoed statement, consistently showing Mr. Reed positively identified the defendant as the shooter at the scene and again at the emergency room. Mr. Reed made subsequent corroborating statements identifying the defendant as the shooter. While he recanted this identification during his trial testimony, the fact that

8

the record contains evidence that conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. *State v. Williams*, 2016-0519 (La. App. 1 Cir. 9/15/17), 2017 WL 4082077 at *4, *writ granted in part on other grounds*, 2017-1753 (La. 6/15/18), 245 So.3d 1042 (*per curiam*) (upholding convictions in part based on the victim's pretrial identification of the defendant as the person who robbed and shot him, though the victim recanted at trial).

Considering Mr. Reed's pretrial statements identifying the defendant and the jail phone calls played at trial, the jury could have rationally concluded the defendant was the shooter and had an agreement with Mr. Reed to recant his prior identification. Actions by a defendant that are designed to influence the testimony of witnesses or prevent witnesses from testifying give rise to an inference that he acted from an awareness or consciousness of his own guilt. *Williams,* 2017 WL 4082077 at *5. We cannot say the jury's determination was irrational under the facts and circumstances presented at trial. *See State v. Ordodi,* 2006-0207 (La. 11/29/06), 946 So.2d 654, 661-62. After a thorough review of the record, we are convinced a rational trier of fact, viewing the evidence in the light most favorable to the State, could find the State proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, the elements of attempted second degree murder and possession of a firearm by a person convicted of certain felonies and the defendant's identity as the perpetrator of the offenses. Thus, assignment of error number one lacks merit.

## MOTIONS FOR MISTRIAL

In assignment of error number two, the defendant argues the trial court should have granted a mistrial when the State presented other crimes evidence of bribery in describing the recorded jail phone calls during opening and closing remarks. He argues the trial court's admonition to the jury was insufficient.

The State's opening statement shall explain the nature of the charge and generally set forth the nature of the evidence by which the State expects to prove the charge. La. C.Cr.P. art. 766. Further, closing arguments in criminal cases shall be limited to the evidence admitted, the lack of evidence, factual conclusions that may be drawn therefrom, and the law applicable to the case. La. C.Cr.P. art. 774. The

argument shall not appeal to prejudice. *Id.* Rebuttal closing arguments shall be confined to answering the defendant's argument. *Id.* A prosecutor is afforded considerable latitude in making closing arguments. *State v. Murphy,* 2016-0901 (La. App. 1 Cir. 10/28/16), 206 So.3d 219, 228-29.

Louisiana Code of Evidence article 404(B)(1) provides that evidence of other crimes, acts, or wrongs is generally not admissible. Under La. C.Cr.P. art. 770(2), upon a defendant's motion, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during trial or in argument, refers directly or indirectly to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. Louisiana Code of Criminal Procedure article 771, in pertinent part, allows the defendant to request that the court promptly admonish the jury to disregard irrelevant or prejudicial remarks made by the district attorney when the remarks are not within the scope of La. C.Cr.P. art. 770. The court may grant a mistrial on the defendant's motion if it is satisfied an admonition is insufficient to assure the defendant a fair trial. La. C.Cr.P. art. 771. A mistrial under La. C.Cr.P. art. 771 is granted or denied at the trial court's discretion and should be granted only where the witness's or prosecutor's prejudicial remarks make it impossible for the defendant to obtain a fair trial. *Murphy,* 206 So.3d at 228.

Generally, other crimes evidence is admissible when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. art. 404(B)(1). For other crimes evidence to be admissible under the integral act exception (formerly known as *res gestae*), the evidence must bear such a close relationship with the charged crime that the indictment or information as to the charged crime can fairly be said to have given notice of the other crime evidence as well. *Murphy,* 206 So.3d at 228. A mistrial is a drastic remedy that the trial court should grant only when the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. *Id.* at 229. The trial court has sound discretion in determining whether a mistrial should be granted, and its denial

of a motion for mistrial will not be disturbed on appeal without abuse of that discretion. *Id.*

Herein, defense counsel objected during the State's opening remarks, after the prosecutor stated: "You're going to hear jail calls made by [the defendant] . . . where he's going to talk about manipulation and bribery and convincing Mr. Reed not to tell the truth." After defense counsel objected, the jury was removed, and defense counsel moved for a mistrial arguing that the State referenced another crime. The State argued the assertion was "part and parcel of this case."

Noting the jury would hear the jail phone calls and make their own determination of what they proved, the trial court denied the motion for mistrial but instructed the State to refrain from making inferences to bribery. The trial court also offered to admonish the jury to disregard such references. However, the trial court noted the State would be allowed in its closing remarks to argue influence was proven by the evidence. The trial court indicated the State would, at that point, decide whether it should use the word "bribery" and "risk a mistrial[.]" Defense counsel agreed to the admonition, and the trial court admonished the jury, as agreed.

The defendant contends the State later twice referenced "bribery" during its closing argument. Specifically, defense counsel objected when the prosecutor made the following statements during rebuttal: "And bless [Mr. Reed's] heart, he was not brave enough, but that does not mean that his actions -- Mr. Carter's actions should be excused. We cannot allow this to be the wild, wild west, but we come in and we bribe -- we influence the testimony." At a bench conference, the trial court indicated its prior ruling was made before the evidence was introduced. In again denying a mistrial, the trial court ruled the State was allowed to make the argument that the evidence showed a bribery and noted the jury would be instructed that the remarks were argument, not evidence. Nonetheless, thereafter, the State did not use the word bribery but instead argued the defendant tried to influence Mr. Reed not to truthfully testify. The defendant now argues statements heard by the jury during opening and again in closing arguments about him "bribing" Mr. Reed made a fair trial and fair assessment of the actual evidence and the defense unlikely.

11

As stated, closing arguments shall be limited to admitted evidence, the lack of evidence, factual conclusions that may be drawn therefrom, and the applicable law; and rebuttal closing arguments shall be confined to answering the defendant's argument. *See* La. C.Cr.P. art. 774. The trial court has broad discretion in controlling the scope of closing arguments, and we will not reverse a conviction on the basis of improper closing argument unless thoroughly convinced the remarks influenced the jury and contributed to the verdict. *State v. Dupre*, 2022-1228 (La. App. 1 Cir. 4/14/23), 367 So.3d 81, 90. Credit should be given to the good sense and fair-mindedness of the jurors who have seen the evidence and heard the arguments. *Murphy*, 206 So.3d at 231.

Initially, we note the trial court instructed the jury that opening and closing arguments and comments by the lawyers for either side do not constitute evidence. We further note the State's rebuttal arguments at issue were in response to defense counsel's closing argument portraying the content of the jail phone calls as ordinary exchanges among family members that the State had "taken out of context." Moreover, the minutes reflect the trial court held a hearing outside the presence of the jury and determined the jail phone calls were admissible.[9] Thus, any related remarks by the State during closing arguments pertaining to what the calls showed did not constitute inadmissible other crimes evidence. *See* La. C.Cr.P. art. 770(2). Further, we find the prosecutor's remarks did not make it impossible for the defendant to obtain a fair trial. *See* La. C.Cr.P. art. 775(6); *Dupre*, 367 So.3d at 90. Considering the foregoing, the drastic remedy of a mistrial was not warranted in this case. Assignment of error number two lacks merit.

---

[9] In *State v. Burnette*, 353 So.2d 989 (La. 1977), the Louisiana Supreme Court addressed the issue of the admissibility of evidence showing a defendant attempted to influence witness testimony. The *Burnette* court noted that actions by a defendant designed to prevent witnesses from testifying give rise to an inference that he acted from a consciousness of his own guilt. *Id.* at 992. Further, the *Burnette* court indicated that such evidence has substantial probative value in a proceeding designed to test the guilt or innocence of an accused. *See Id.*; *State v. Williams*, 2016-0519 (La. App. 1 Cir. 9/15/17), 2017 WL 4082077, *5, *writ granted in part, denied in part*, 2017-1753 (La. 6/15/18), 245 So.3d 1042.

Where there is evidence to connect the accused therewith, evidence of an attempt in a criminal prosecution to induce a witness to testify falsely is admissible, since it leads to an inference that, if admitted, it would operate unfavorably to the accused. *Burnette*, 353 So.2d at 991. As the *Burnette* Court set forth, actions by the defendant designed to prevent a witness from testifying are admissible if: (1) the evidence fits the class of evidence constituting such admissions by conduct; (2) there is substantial evidence the defendant committed the other acts; and (3) the probative value of the evidence will outweigh its prejudicial effect. *Id.* at 922. Because such evidence has "substantial probative value" in a proceeding designed to test the guilt or innocence of an accused, the question of whether the evidence should be admitted has been almost universally answered in the affirmative. *Id.*

## INCOMPLETE RECORD/DUE PROCESS

In assignment of error number four, the defendant argues his due process rights were violated because portions of Officer Poirrier's remote testimony, via the Court Call App, were not effectively communicated and were marked in the transcript as indiscernible. He notes Officer Poirrier was a "critical" witness.

Louisiana Constitution article I, §19 guarantees a defendant a right of appeal based upon a complete record of all the evidence upon which the judgment is based. Additionally, La. C.Cr.P. art. 843 requires, in a felony case such as here, that the clerk or the court stenographer record all of the proceedings, including the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel. Pursuant to La. R.S. 13:961(C), in criminal cases, the court reporter shall record all portions of the proceedings required by law or the court and shall, when required by law or the court, transcribe those portions of the trial proceedings required. Finally, pursuant to La. C.Cr.P. art. 917, the clerk of the trial court shall prepare the record on appeal and lodge it with the appellate court on or before the return date or any extension thereof.

Material omissions from the transcript of the proceedings at trial bearing on the merits of an appeal will require reversal. *State v. York*, 2013-1529 (La. App. 1 Cir. 3/24/14), 2014 WL 1203207, *7, *writ denied*, 2014-1047 (La. 4/17/15), 168 So.3d 392. On the other hand, inconsequential omissions or slight inaccuracies do not require reversal. *Id.* Finally, a defendant is not entitled to relief because of an incomplete record absent a showing of prejudice based on the missing portions of the transcripts. *Id.*; *also see* La. C.Cr.P. art. 921.

The defendant contends a jury trial, and now a direct appeal, in which the testimony of a critical prosecution witness was not effectively communicated is a violation of his right to due process. As the defendant notes, Officer Poirrier was not in Pointe Coupee at the time of the trial and testified via a communications platform (Court Call App). A court reporter's note in the record states there was interference and those parts of the testimony she was unable to transcribe were marked as indiscernible. Examples of this occurrence in the record include the following testimony

by Officer Poirrier: "So if you look at this photograph that's where Quincy Reed was found. The couch (indiscernible) as they were bringing him (indiscernible)." Another example includes his following testimony: "I went to the living room and Officer Burns stayed over by the kitchen area and continued to talk with Quincy Reed. And basically (indiscernible) about five minutes or so before (indiscernible) arrived on scene (indiscernible)." A subsequent lengthy statement from Officer Poirrier's testimony contained unintelligible words as follows:

> During the process of the paramedics arriving and (indiscernible) for the sheriff's office (indiscernible) Quincy Reed and Casanova Carter (indiscernible) advised that (indiscernible) from the scene (indiscernible) girlfriend, Ms. Groom, (indiscernible) Casanova Carter, but at not [sic] point in time did Casanova Carter arrive (indiscernible) situation, because any time there was an incident at that residence all the family members (indiscernible) what was going on the residence.

Two additional statements by Officer Poirrier included a word marked as indiscernible.

We note the defendant did not object at the trial court level to problems with Officer Poirrier's testimony; nor did he claim that a connectivity issue prevented the effective direct or cross examination of Officer Poirrier. Likewise, on appeal, the defendant has not pointed to any critical portion of Officer Poirrier's testimony that was inadequately communicated or incomprehensible. While there were omissions of certain words from the transcript, marked as indiscernible, the record reflects the substance of Officer Poirrier's testimony was adequately conveyed such that there has been no showing of prejudice. Specifically, despite momentary interferences, the transcript shows Officer Poirrier testified as follows: (1) he responded to the scene; (2) he found Mr. Reed in a pool of blood; (3) Mr. Reed told him he had been shot by the defendant; (4) Officer Poirrier relayed this information to the 911 dispatcher; (5) he determined the shooter fled the scene; and (6) the next day, he collected a bullet from the couch. Officer Poirrier also identified photographs of the scene and the bullet he collected from the scene.

Furthermore, other evidence presented to the jury corroborated Officer Poirrier's testimony, including the 911 call showing Mr. Reed named the defendant as the shooter at the scene and Mr. Reed's subsequent statements to Officer Johnson also identifying the defendant as the shooter. Based on our review of the testimony at issue and the

record in its entirety, we find the omissions in the trial transcript were inconsequential and did not affect the defendant's substantial rights or bear on the merits of the appeal. *See* La. C.Cr.P. art. 921. Thus, assignment of error number four lacks merit.

## DIVESTITURE OF JURISDICTION/SENTENCING ERRORS

On appeal, this Court routinely reviews the record for error patent. Pursuant to La. C.Cr.P. art. 920(2), in conducting a patent error review, this Court shall consider an error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence. Inasmuch as an illegal sentence is an error discoverable by a mere inspection of the proceedings without inspection of the evidence, La. C.Cr.P. art. 920(2) authorizes consideration of such an error on appeal. *State v. Parker*, 2023-0941 (La. App. 1 Cir. 6/27/24), 392 So.3d 652, 662. Moreover, La. C.Cr.P. art. 882(A) authorizes the appellate court to correct an illegal sentence on review.

Initially, we note the trial court sentenced the defendant on August 16, 2023, after granting his motion for an appeal on July 18, 2023. However, pursuant to La. C.Cr.P. art. 916, the trial court was divested of jurisdiction upon the entering of the order of appeal. Once the trial court is divested of jurisdiction, it may take only certain specified actions, none of which include imposing a sentence. *See* La. C.Cr.P. art. 916; *State v. Skipper*, 2023-0088 (La. App. 1 Cir. 9/15/23), 2023 WL 5993031, *3. Thus, after the trial court granted the defendant's motion for appeal, it no longer had jurisdiction to impose sentences. When issues raised on appeal involve actions taken by the trial court after it was divested of jurisdiction, the appropriate action is often to vacate those actions and remand the matter. *See State v. Patton*, 2021-613 (La. App. 5 Cir. 11/17/21), 347 So.3d 1070, 1071.

In the present case, upon granting the defendant's motion for appeal, the trial court was divested of jurisdiction to subsequently sentence the defendant, and the defendant seeks review of his consecutive sentences on appeal. As the motion for appeal was prematurely granted before sentencing, we vacate the defendant's sentences and remand for resentencing. Thus, we pretermit discussion of the excessive

15

sentence argument raised in assignment of error number three, but note the following sentencing errors, to be avoided in resentencing the defendant on remand.

As previously noted, the trial court failed to impose the sentence on count one at hard labor, as mandated by La. R.S. 14:27(D)(3) and La. R.S. 14:30.1(B). Additionally, on count two, the trial court failed to impose the fine mandated by La. R.S. 14:95.1(B), of not less than $1,000 nor more than $5,000, and failed to conduct, waive, or obtain defendant's waiver of, a hearing as required by La. C.Cr.P. art. 875.1(C)(1) to determine whether payment of a fine would cause substantial hardship to the defendant or his dependents. Finally, we note in resentencing the defendant on remand, the trial court should properly advise the defendant of the prescriptive period to seek post-conviction relief pursuant to La. C.Cr.P. art. 930.8(A).[10]

**CONVICTIONS AFFIRMED; SENTENCES VACATED; REMANDED FOR RESENTENCING.**

---

[10] Specifically, the trial court only previously informed the defendant he would have "two years to file the post-conviction relief." However, the defendant generally has two years *after* his convictions and sentences become final to apply for post-conviction relief. La. C.Cr.P. art. 930.8(A).